replacement SSSG. The central issue was the determination of which of two conflicting interest clauses in QualMed's contract governed OPM's right to interest on the adjustment in the FEHBP rates. Section 5.9 of the contract set forth Federal Acquisition Regulation ("FAR") § 52.215-23, the Price Reduction for Defective Cost or Pricing Data - Modifications clause. That clause provides that price reductions thereunder bear interest from the date of overpayment. Section 5.34, the standard Interest clause found at FAR § 52.232-17, provides that all amounts other than those encompassed by the Price Reduction for Defective Cost or Pricing Data clause bear simple interest from the date due.

The QualMed court found that Section 5.9 only applies to errors that involve "defective cost or pricing data." The crux of the QualMed court's ruling is that a distinction must be drawn between errors that constitute "defective community rating and pricing" and those that involve the submission of "defective cost or pricing data." OPM is entitled to interest from the date of the overpayment on the latter but not on the former.

Based on its interpretation of the 1987 Federal Register notice explaining the applicability of the Price Reduction for Defective Cost or Pricing Data clause to community rated contracts, the QualMed court found that the distinction applies according to the two steps it identified in the rating process. "Step One" involves the SSSG selection and the establishment of a market price based on the rates and methodology employed in rating the SSSGs. "Defective community rating and defective pricing" relates to an error in the first step: the selection of the SSSGs and the determination of the base community rate for the SSSGs. This encompasses errors in rating methodology and structure or the use of a methodology inconsistent with that used to rate the FEHBP plan. "Step Two" is the conversion of the base rate into the FEHBP rate through FEHBP-specific adjustments regarding FEHBP benefits and FEHBP demographics, i.e. the particular loadings and demographic composition of the federal plan. "Defective cost or pricing data" corresponds to an error in modifying the base rate to calculate the FEHBP subscription rate, e.g. errors in special benefits loadings or the Federal demographic data on which the base community rate is converted.[1]

The defective pricing adjustment that OPM seeks for 1993 is premised on its challenge to BlueLincs' SSSG designation and the understated rates charged to the replacement SSSG that OPM selected. Our comments above, as well as those dated September 9, 1999, point out the error of OPM's position in challenging the SSSG selection and maintain that, if the original designation were flawed, a company other than that substituted by OPM should be used as the SSSG. According to the QualMed analysis, this type of issue – an apparent error in the selection of the SSSGs – is a Step One error that falls within the category of defective community rating and defective pricing. Thus, even if OPM were entitled to the $1,348,239 adjustment sought for 1993, no interest on this amount would be due until after a demand for payment remains unpaid.

OPM has identified two errors in BlueLincs' rate development in 1994. The two SSSGs that BlueLincs' selected, which OPM accepted, received discounts from the market price rates larger than the discount provided to the FEHBP. BlueLincs also overcharged the

---

[1] We have attached excerpts from the briefs and hearings in that case that illustrate the distinctions between the two steps in the rating process.

Government by including enrollees over age 65 in calculating the age/sex factor for the FEHBP when it had excluded such enrollees in the calculation for the SSSGs. Under QualMed, the first is a Step One error because it reflects an error in the rating methodology used for the SSSG. As such, it is not subject to the assessment of interest from the date of overpayment pursuant to Section 5.9. The second error is also a Step One error in that it is based on an inconsistency between the rating methodology used for the SSSG and that used for the FEHBP, rather than a mistake in calculating the FEHBP demographics. Accordingly, none of the 1994 adjustment of $590,038 is subject to the assessment of interest from the date of overpayment.[2]

For 1995, OPM seeks an adjustment based on "an error in calculating the FEHBP's age/sex factors." BlueLincs, in accordance with its internal policy, failed to update the age/sex factors to reflect adjustments made subsequent to its rate proposal but prior to renewal of the FEHBP plan. OPM's position is that, since the updated factors were used in the rating of one of the SSSGs, they should have been used for the FEHBP. Since the basis for its challenge is the inconsistency between the methodology used for the FEHBP and that used for the SSSG, this error is in essence a Step One error, subject under QualMed to the assessment of interest not from the date of overpayment but only after a demand for repayment is made.

We assume that OPM will contend that the QualMed decision only affects the timing of interest assessment through contract year 1994. In December 1994, effective January 4, 1995, OPM added an interest provision, providing for interest from the date of overpayment, back into its FEHBP-specific "Rate Reduction for Defective Pricing or Defective Cost or Pricing Data" clause, FEHBAR § 1652.215-70. The applicability of a similar clause was at issue in PCA Health Plans of Texas, Inc. v. LaChance ("PCA"), 191 F.3d 1353 (Fed. Cir. 1999), rehearing denied (Nov. 5, 1999). PCA argued that Section 5.9 (effective 22 January 1991), providing for accrual of interest on overpayments due to defective pricing, did not apply to contract year 1991 because Section 1.4 postponed the application of regulations with a negative impact on the contractor until a subsequent contract year. OPM issued in May 1991 and PCA signed in June, presumably at the conclusion of rate reconciliation, an amendment to the contract to incorporate that year's rate schedule and to replace earlier versions of regulations with the current revised regulations. The amendment stated that its terms were "not negotiable" and that it was "Effective: January 1, 1991." The Federal Circuit concluded that by signing the contract modification, PCA agreed to the January 1, 1991 effective date, apparently for any and all of its terms. Thus, PCA's signature without taking exception to any of the amendment's terms was found to constitute an agreement to an "earlier date" than the subsequent contract year within the terms of Section 1.4 (i).

Given the ruling in PCA, in reference to the effective date of the 1991 clause, we anticipate that OPM will take the position that the clause is effective for the 1995 contract year unless the Carrier took specific exception to its applicability when it signed the contract for 1995. For purposes of achieving a settlement of the audit issues, BlueLincs is willing to pay OPM interest from the date of overpayment on the 1995 adjustment. We calculate that amount as $75,867 through calendar year 1999. In the event, however, that the parties are unable to reach agreement on the lost investment income issue, we reserve the right to argue in any

[2] Even if the second error were considered a Step Two error in the FEHBP demographics, the portion of the 1994 adjustment subject to interest from the date of overpayment would be only $158,997.

subsequent proceeding that the clause is not applicable to 1995. Simply stated, we believe the PCA decision is wrong with respect to the effective date and timing of the contract modifications. We are prepared to revisit that issue and develop a better factual record regarding OPM's practices if the audit issues cannot be resolved.

Please let us know if any further information is necessary to resolve these issues. We are willing to meet with you to discuss an appropriate resolution if you would find that helpful.

Very truly yours,

Daniel Abrahams

Daniel B. Abrahams
Constance A. Wilkinson

cc: Susan Furgerson

BlueCross BlueShield of Oklahoma

1215 South Boulder
PO Box 3283
Tulsa, Oklahoma 74102-3283
Telephone: (918) 631-6688
Fax: (918) 631-6656
E-mail: jroberts@bcbsok.com

JAMES R. ROBERTS
Group Vice President
Marketing

July 14, 2000

Ms. Janeen Ball
Health Contractor Specialist
Office of Personnel Management
Room 3459
Washington, DC 20415
FAX: 202-606-0767

Dear Janeen:

As you requested of Lisa Putt, this letter will confirm that Blue Cross and Blue Shield of Oklahoma will no longer be offering BlueLincs HMO to federal employees for 2001. We have chosen to concentrate on our commercial business.

We look forward to working with you in notifying our members 90 days in advance so that that they can choose other coverage during Open Enrollment.

Sincerely,

James R. Roberts

James R. Roberts
Group Vice President - Marketing



A Member of the Blue Cross and Blue Shield Association, an Association of Independent Blue Cross and Blue Shield Plans.

United States
**Office of**
**Personnel Management** Washington, D.C. 20415

In Reply Refer To: Your Reference:

JAMES R ROBERTS
GROUP VICE PRESIDENT MARKETING
BC BS OF OKLAHOMA
1215 SOUTH BOULDER
PO BOX 3283
TULSA OKLAHOMA 73102 3283

JUL 20 2000

Dear Mr. Roberts:

This is in reply to your letter dated July 14, 2000, notifying the Office of Personnel Management (OPM) that BlueLincs HMO enrollment code N5 will not be renewing its contract for 2001. The Plan will, therefore, withdraw from participation in the Federal Employees Health Benefits program (FEHBP) at the end of the 2000 contract year.

Please notify all Federal enrollees enrolled in code N5 by sending them a copy of the enclosed notice. It should be printed on your Plan's letterhead. This notice must be mailed no later than **September 15, 2000**. Please send us a copy of the final notice (dated) in advance of your mailing to your enrollees.

Please remember that you are required to provide benefits to all Federal enrollees until coverage under their new health plans begins next year.

> 5 CFR Section 890.201 (a)(9) states, "a health benefits plan shall ... Provide for continued enrollment to the end of the current pay period for each employee and annuitant enrolled at the effective date of termination of a contract. The carrier is entitled to subscription charges for this continued enrollment."

This means your Plan is responsible for continuing coverage until the effective date of each Federal enrollee's new health plan enrollment, which will be shown on your Plan's copies of enrollees' new Health Benefits Registration Forms (SF 2809) or the electronic or hard copy lists of enrollment changes provided by agencies and retirement systems.

We appreciate your notification and we will work with you to ensure a smooth transition. Please continue to work with your OPM Contract Specialist if you need any assistance.

Sincerely,

David A. Lewis, Chief
Insurance Contracts Division III
Office of Insurance Programs

Enclosure

C:/2001/Termination BlueLincs JFBall ______ 7/19/00

BLUELINCS HMO

This is to inform you that you need to choose a new health plan for 2001. This Plan (BlueLincs HMO enrollment code N5) is terminating its contract and will not be offered to federal enrollees next year.

To continue to receive benefits under the Federal Employees Health Benefits (FEHB) Program, you will need to change to another health plan during the **Open Season** which will be held from **November 13 through December 11, 2000**. The effective date of your change will be the first pay period in 2001. Your health plan will continue to provide benefits until the effective date of your enrollment change.

**Patients' Bill of Rights:** Under the Patients' Bill of Rights, enrollees who are seeing a specialist for a chronic or disabling condition or who are in the second or third trimester of a pregnancy have a right to continued treatment for up to 90 days of care (or treatment through the end of post-partum care) following notice that a health plan is leaving the FEHB program. This information is being provided to you more than 90 days in advance so that you have time to make arrangements for your continued care.

**Employees**: If you are an employee, please contact your personnel office and enroll in a new health plan by no later than December 11, 2000. **If you do not change your enrollment by that date, you will not have any health benefit coverage in 2001**. The effective date of coverage for your new health plan will generally be the first day of the first pay period beginning on or after January 1, 2001. The new premium will be effective the first full pay period in 2001. For **Postal employees**, the effective date will usually be January 1, 2001.

**Retirees:** If you are retired, your retirement system will send you Open Season materials to help you to select a different health plan. This information will tell you how to request health plan brochures and how to change your enrollment to a new health plan. You will need to select a new health plan during the Open Season. **If we do not receive your enrollment change by the end of Open Season, your enrollment will be transferred to the Blue Cross and Blue Shield Service Benefit Plan.**

If you are a Civil Service Retirement System (CSRS) or Federal Employees Retirement System (FERS) retiree and need additional information, you should call Open Season Express at 1.800.332.9798 or access Open Season Online at http://www.opm.gov/retire/fehb. If you have impaired hearing, the Retirement Information Office has a toll-free TDD number you may use for assistance (1.800.878.5707). Please have your annuity claim number and your social security number available when you call. Please also include these numbers in any correspondence. **If you are a retiree of another Federal retirement system, you should contact your retirement system if you need additional help.**
**our retirement system if you need additional help.**

United States
**Office of**
**Personnel Management**

Washington, D.C. 20415

In Reply Refer To: Your Reference:

Susan Furgerson, CPA
Vice President, Finance
BlueLincs HMO Health Plan
1400 South Boston
PO Box 21128
Tulsa, Oklahoma 74121-1128

SEP 7 2000

Dear Ms. Furgerson:

I am writing about Final Audit Report No. N5-00-98-045 dated April 12, 2000, on Bluelincs HMO Health Plan. This letter follows-up the audit resolution negotiations recently concluded between Ms. Connie Wilkinson, Legal Counsel for Bluelincs and members of the Office of Personnel Management's (OPM) Insurance Planning and Evaluation Division staff.

This letter conveys the Contracting Officer's agreement to accept resolution on the outstanding "Defective Pricing" issues for contract years 1993 and 1994 for $221,121. We will address the "Lost Investment Income" issues for contract years 1993, 1994 and 1995 under separate cover as a Final Decision.

You should remit a check to the Federal Employees Health Benefits Fund in the amount of $221,121 within 20 days from the date of this letter. Make the check payable to OPM and forward it by express mail to the following address:

Office of Personnel Management
Office of Insurance Programs
ATTN: Mary F. Saunders
1900 E Street, NW, Room 3422
Washington, D.C. 20415

Should you or members of your staff have questions concerning these audit issues, please contact Mary Saunders in the Insurance Planning and Evaluation Division at (202) 606-0745.

Sincerely,

Frank D. Titus
Assistant Director
for Insurance Programs

cc: David Lewis, Chief
Insurance Contracts Division III

Connie Wilkinson, Legal Counsel
for BlueLincs

bcc: Office of the Inspector General

Office of the Actuaries

Office of the General Counsel

Rick Lowe

Keith Willingham

SEP 13 2000

United States
**Office of**
**Personnel Management**

Washington, D.C. 20415

In Reply Refer To: Your Reference:

Susan Furgerson, CPA
Vice President, Finance
Bluelincs HMO Health Plan
1400 South Boston
PO Box 21128
Tulsa, Oklahoma 74121-1128

SEP 7 2000

**Final Decision No. 154**

Dear Ms. Furgerson:

I am writing about Final Audit Report No. N5-00-98-045 dated April 12, 2000, on Bluelincs HMO Health Plan. We have been unable to resolve the "Lost Investment Income" issues for contract years 1993, 1994 and 1995. This letter conveys the Contracting Officer's position as it relates to those issues.

While a resolution was reached on the defective pricing issues for contract years 1993, 1994 and 1995, I find that the settlement amounts constitute overcharges for those years. We have determined that in accordance with the standard contract, the Federal Employees Health Benefits Program (FEHBP) is entitled to a recovery of lost investment income calculated back to the date of the overpayment, plus interest accrued up to the time the funds are returned to the FEHBP.

Under Section 5.9(e) of the standard contract and the FEHBAR 1652.215-70, the FEHBP is entitled to recovery of lost investment income charges totaling $312,867. Copies of worksheets on the lost investment income calculations are enclosed.

My decision will be final unless you furnish a written notice of appeal to me and the Armed Services Board of Contract Appeals within 90 days of receipt of this decision, or, you file suit in the United States Court of Claims within 12 months of receipt of this decision. You or an attorney acting on your behalf should sign the appeal notice. It should clearly indicate that an appeal is intended, refer to this decision, and identify the contract by number. The notice of appeal should include a statement of the reasons why you consider this decision erroneous.

Should you or members of your staff have questions concerning these audit issues, please contact Mary Saunders in the Insurance Planning and Evaluation Division at (202) 606-0745.

Sincerely,

Frank D. Titus
Assistant Director
for Insurance Program

Enclosures

cc: David Lewis, Chief
Insurance Contracts Division III

Connie Wilkinson, Legal Counsel
for Bluelincs

bcc: Office of the Actuaries

Office of the Inspector General

Office of the General Counsel

Rick Lowe

Keith Willingham

LOST INVESTMENT INCOME

QUESTIONED AMOUNTS

| Audit Findings: | 1993 | 1994 | 1995 | 1996 | 1997 | 1998 | 1999 | 2000 11-Aug | Total |
|---|---|---|---|---|---|---|---|---|---|
| Defective Pricing | $69,796 | $151,325 | | $0 | $0 | $0 | $0 | $0 | $221,121 |
| Totals (per year): | $69,796 | $151,325 | | $0 | $0 | $0 | $0 | $0 | $221,121 |
| Cumulative Totals: | $69,796 | $221,121 | $221,121 | $221,121 | $221,121 | $221,121 | $221,121 | $0 | |
| Avg. Interest Rate (per year): | 6.063% | 6.2500% | 7.2500% | 6.4375% | 6.5630% | 6.1250% | 5.7500% | 7.0000% | |
| Interest on prior Years Findings: | 0 | $4,362 | $16,031 | $14,235 | $14,512 | $13,544 | $12,714 | $9,502 | $84,901 |
| Current Years Interest: | $2,116 | $4,729 | $0 | $0 | $0 | $0 | $0 | $0 | $6,845 |
| Total Cumulative Interest: | $2,116 | $9,091 | $16,031 | $14,235 | $14,512 | $13,544 | $12,714 | $9,502 | $91,745 |

LOST INVESTMENT INCOME

QUESTIONED AMOUNTS

| Audit Findings: | 1994 | 1995 | 1996 | 1997 | 1998 | 1999<br>07-Oct | 2000 | Total |
|---|---|---|---|---|---|---|---|---|
| Defective Pricing | $438,713 | $266,015 | $0 | $0 | $0 | $0 | $0 | $704,728 |
| Totals (per year): | $438,713 | $266,015 | $0 | $0 | | $0 | | $704,728 |
| Cumulative Totals: | $438,713 | $704,728 | $704,728 | $704,728 | $704,728 | $704,728 | $0 | $704,728 |
| Avg. Interest Rate (per year): | 6.2500% | 7.2500% | 6.4375% | 6.5630% | 6.1250% | 5.7500% | 0.0000% | |
| Interest on prior Years Findings: | $0 | $31,807 | $45,367 | $46,251 | $43,165 | $31,179 | $0 | $197,769 |
| Current Years Interest: | $13,710 | $9,643 | $0 | $0 | $0 | $0 | $0 | $23,353 |
| Total Cumulative Interest: | $13,710 | $41,450 | $45,367 | $46,251 | $43,165 | $31,179 | $0 | $221,122 |

13-Jul-00

# Bluelincs HMO (N5)

## 2000 Reconciliation - Attachment III

| | SELF | FAMILY |
|---|---|---|
| 1. Actual Community Rate 1/1/2000 | $73.50 | $163.88 |
| 2. Special Benefit Loadings | | |
| (a) Prescription Drug | $17.54 | $42.38 |
| (b) Supplemental Mental Health & Therapy Benefits | $1.10 | $2.66 |
| (c) Vision | $0.38 | $0.92 |
| (d) Prescription Drug Supplement | $1.17 | $2.83 |
| (e) Premium Tax Adjustment | ($2.06) | ($4.68) |
| (f) | | |
| 3. Community Rate Plus Special Loadings | $91.63 | $207.99 |
| 4. Standard Loadings | | |
| (a) Extension Of Coverage [ 0.004 * (3.) ] | $0.37 | $0.83 |
| (b) Children's Loading | | |
| (c) Medicare Loading | | |
| 4d. Subtotal | $92.00 | $208.82 |
| 4e. Enrollment Discrepancies Loading (1%) | $0.92 | $2.09 |
| 5. Total = Actual Rate For 2000 | $92.92 | $210.91 |
| 6. 2000 FEHBP Contract Rate | $86.53 | $189.69 |
| 7. Difference ((5)-(6)) | $6.39 | $21.22 |
| 8. March 31, 2000 Enrollment | 846 | 1,458 |
| 9. Payment Due Plan /(FEHBP) | $140,554 | $804,408 |
| 10. Total Amount Due Plan/(FEHBP) | | $944,962 |
| 11. Outstanding Amount Due Plan/(FEHBP) | | (~~$3,331,5~~18) |
| 11a. Brochure Printing Costs | | $270 |
| 11b. Penalty | | ($500) |
| 12. Grand Total Amount Due Plan/(FEHBP) | | **($1,386,786)** |

944,732

EPSTEIN BECKER & GREEN, P.C.
ATTORNEYS AT LAW
1227 25TH STREET, N.W., STE. 700
WASHINGTON, D.C. 20037-1175
(202) 861-0900
FAX: (202) 296-2882

DIRECT:
(202) 861-1854

250 PARK AVENUE
NEW YORK, NEW YORK 10177-1211
(212) 351-4500

1875 CENTURY PARK EAST, STE. 500
LOS ANGELES, CALIFORNIA 90067-2500
(310) 556-8861

ONE LANDMARK SQUARE, STE. 1800
STAMFORD, CONNECTICUT 06901-2681
(203) 348-3737

THE LEGAL CENTER
ONE RIVERFRONT PLAZA, 7TH FLOOR
NEWARK, NEW JERSEY 07102-5480
(973) 642-1900

55 EAST MONROE STREET, 29TH FLOOR
CHICAGO, ILLINOIS 60603-5709
(312) 845-1900

75 STATE STREET, 27TH FLOOR
BOSTON, MASSACHUSETTS 02109-1813
(617) 342-4000

3300 PEACHTREE ROAD, N.E., SUITE 1400
ATLANTA, GEORGIA 30326-2854
(404) 812-5680

TWO EMBARCADERO CENTER, SUITE 1650
SAN FRANCISCO, CALIFORNIA 94111-3994
(415) 398-3500

PARK CENTRAL VII
12750 MERIT DRIVE, STE. 1320
DALLAS, TEXAS 75251-1219
(972) 639-2450

October 31, 2000

**VIA FACSIMILE**

Frank D. Titus
Assistant Director for Insurance Programs
Office of Personnel Management
Washington, D.C. 20415

Re: BlueLincs HMO Health Plan
Final Decision No. 154

Dear Mr. Titus:

We represent BlueLincs HMO Health Plan ("BlueLincs"). We request that you review and reconsider OPM's position regarding funds it intends to withhold from BlueLincs in connection with an audit resolution.

In Final Decision No. 154, dated September 7, 2000, the Office of Personnel Management ("OPM") informed BlueLincs that, based on defective pricing issues identified in Final Audit Report No. N5-00-98-045, BlueLincs owes $312,867 in lost investment income ("LII") to the Federal Employees Health Benefits Program ("FEHBP"). The parties had reached a resolution regarding the principal amounts, but BlueLincs has preserved for further consideration the lost investment income issue pending the outcome of OPM's appeal involving QualMed Plans for Health of New Mexico, Inc.

In telephone conversations on October 2 and 6, 2000, Sherry Simon of your office informed Susan Furgerson of BlueLincs that OPM intended to withhold the full amount of the LII claim from a payment to be made to draw down excess contingency reserves, paying BlueLincs only $211,166 of the total $580,264 available. Ms. Simon also stated that OPM's contract year 2000 reconciliation produced a balance due to BlueLincs of $369,127 but that these funds would not be paid to BlueLincs because it was terminating its FEHBP contract. Although we recognize that the Government's common law right of setoff permits it to collect contract debts by withholding other amounts due to the contractor, we submit that any OPM collection efforts

DC:132707.1

should use the reconciliation balance, rather than the excess contingency reserves, to recover the lost investment income claim. In subsequent conversations with Sherry Simon, she told me that the LII claim could not be offset against the reconciliation balance because, in accordance with FEHBAR § 1652.216-70, OPM has no obligation to pay BlueLincs the reconciliation balance.

The Accounting and Price Adjustment clause at FEHBAR § 1652.216-70 provides that "neither the Government nor the Carrier shall be entitled to any adjustment or claim" for the differences between the proposed rates and the reconciled rates if the contract is not renewed. FEHBAR §1652.216-70(b)(6). The FEHBAR clause precludes a positive contract adjustment or claim but it does not expressly prevent a contractor from satisfying an existing contract debt with the reconciliation funds. Nor does anything in the regulatory history indicate that this was OPM's intention.[1] We emphasize that BlueLincs is not claiming that it is entitled to receive the reconciliation balance but rather that OPM's retention of the balance must be considered to satisfy OPM's LII claim against BlueLincs.

Both legal authority and practical realities dictate that the FEHBAR clause should not be interpreted to prevent a contractor from offsetting an OPM claim with the reconciliation balance. The clause is in essence a forfeiture clause, since the contractor loses its right to receive funds to which it would otherwise be entitled. There is a long-standing principle that the law abhors a forfeiture. Knickerbocker Life Ins. Co. v. Norton, 96 U.S. (6 Otto) 234, 242 (1878). Accordingly, such clauses are interpreted strictly and narrowly. See Tobin v. United States, 59 F. Supp. 410 (Ct. Cl. 1945) (liquidated damages provisions will be strictly construed). Moreover, a law that is meant to take away a common law right, such as the right of setoff, must state this explicitly. Sutherland Statutory Construction §§ 61.01, 61.02 (5th ed.). Since the clause does not expressly include offsets, they must not be prohibited. Finally, it would be inequitable to prevent the contractor from using the funds it was underpaid at the same time that OPM seeks to collect funds that it claims to have overpaid in other years.

We recognize that the clause could be construed to prevent BlueLincs from claiming the right to receive a payout of the reconciliation balance if it prevailed in its appeal. Therefore, BlueLincs proposes that the parties compromise the LII claim in the following manner: BlueLincs will "pay" the claim from the reconciliation balance and it will relinquish its right to appeal the

---

[1] In its preamble to the final rulemaking that included this clause, OPM focussed more on the practical difficulties of completing the reconciliation process with terminating plans.

> OPM's experience has been that it is difficult to get adequate data from plans when they have terminated. Further, in the event a plan goes out of business, there are no rates to reconcile. In the opinion of OPM, the most reasonable solution is for both the Government and the carrier to bear the risk of the carrier's termination.

55 Fed. Reg. 27406, 27410 (July 2, 1990). In circumstances such as these, where OPM is not only able to but has performed a reconciliation, the funds should be available to offset any actual or prospective liability. This would include not only OPM's LII claim but also any other findings from audits of contract years 1999 and 2000 that are performed subsequent to the termination.

Frank D. Titus
October 31, 2000
Page 3

Final Decision. Accordingly, OPM would pay BlueLincs $580,264, the full amount of the excess contingency reserves. Of course, the remaining reconciliation balance should be available to satisfy any BlueLincs liability for subsequent contract year audits.

As it stands, the forfeiture of funds is fundamentally unfair. BlueLincs lost money on the FEHBP contract and now OPM would ask it to lose more. This result is certainly not compelled by the FEHBAR. We respectfully request that you take equitable action to remedy this wrong.

We would be happy to meet with you to discuss a resolution of this issue or to provide any additional information you would find helpful.

Very truly yours,

Daniel Abrahams

Daniel B. Abrahams
Constance A. Wilkinson

cc: Jacqueline Haglund
John McCart
Sherry Simon

United States
**Office of**
**Personnel Management** Washington, D.C. 20415-0001

In Reply Refer To: Your Reference:

NOV 6 2000

Ms. Susan Furgerson
BlueLincs HMO
1400 S. Boston Avenue
Tulsa, OK 74119

**Re: BlueLincs HMO (Code N5)**

Dear Ms. Furgerson:

You have informed us that you will be withdrawing from the FEHB program. Therefore, we have not performed a reconciliation of your 2000 contract rates; however, we will settle the outstanding amount owed to you due to the 2000 rate reduction.

**Contingency reserve payment**

Your 2000 proposed rates were reduced by $5.51 per self enrollment and $12.11 per family enrollment in order to generate a contingency reserve payment. We have determined the precise amount that this reduction generated by multiplying the amount of the rate reduction by the plan's actual March 31, 2000 enrollment. See the enclosed calculations.

The result is OPM owes you $580,000. But because of an outstanding audit issue, OPM will hold $314,587 until the audit has been resolved. OPM will pay the balance owed, $265,413, from the contingency reserve.

If you have any questions about this letter, please contact Bryant Cook at (202) 606-0722.

Sincerely,

Nancy H. Kichak
Director
Office of Actuaries

Enclosures

cc: Janeen Ball

Return 4307

**CONTINGENCY RESERVE PAYMENT**

State: Oklahoma

Plan Name: BlueLincs HMO

Code: N5

Amount To Be Paid: $265,413

Comments:

[X] Full amount due plan for 2000 or [ ] Partial due for 2000

[ ] Payment is from reserve in excess of preferred minimum balance, in accord with 5 CFR Ch.1 §890.503 (c)(5)

[ ] Payment is in best interest of employees and annuitants enrolled in program, in accord with 5 CFR Ch.1 §890.503 (c)(6)

[ ] It has been verified that no request has been made by OIP to withhold funds

Clearance Signatures:

[✓] Approved [ ] Disapproved

Nancy H. Kichak 11-5-00

Nancy H. Kichak/Director, Office of Actuaries — Date

[✓] Approved [ ] Disapproved

Keith Willingham 11/7/00

Keith Willingham/Acting Chief, Financial Management Division — Date

cc: Janeen Ball

RA/BCook/blg/10-25-00

BlueLincs
Blue Cross and Blue Shield of Oklahoma

1400 S. Boston • PO Box 21128 • Tulsa, Oklahoma 74121-1128
(918) 561-9900

3401 NW 63rd • PO Box 60545 • Oklahoma City, OK 73146-0545
(405) 841-9770

November 14, 2000

FAX – 202-606-2922

Ms. Nancy H. Kichak
Director, Office of Actuaries
Office of Personnel Management
1900 E Street, NW – Room 4307
Washington, DC 20415

Re: BlueLincs HMO Contingency Reserve Payment – Year 2000

Dear Ms. Kichak:

I received your letter dated November 6, 2000 stating your office has prepared a reconciliation of the contingency reserve settlement for Year 2000 on behalf of BlueLincs HMO.

Epstein, Becker & Green, P.C. previously sent the attached letter to Frank D. Titus requesting that the outstanding audit issue be offset against the rate reconciliation difference for Year 2000 vs. the contingency reserve. Please refer to the attached letter for further clarification.

I look forward to hearing from you relating to this issue. You may contact me at 918-561-9905.

Sincerely,

Susan Furgerson

Susan Furgerson, CPA
Vice President, Finance

Attachment

cc: Lyndle Ellis
Jacqui Haglund



BlueLincs HMO is a Wholly Owned Subsidiary of Blue Cross and Blue Shield of Oklahoma,
a Member of the Blue Cross and Blue Shield Association,
an Association of Independent Blue Cross and Blue Shield Plans.

United States
**Office of**
**Personnel Management** Washington, D.C. 20415

In Reply Refer To: Your Reference:

NOV 15

Daniel B. Abrahams, Attorney
Epstein, Becker & Green, P.C.
Attorneys at Law
1227 25th Street, NW, STE. 700
Washington, D.C. 20037-1175

Dear Mr. Abrahams:

We acknowledge receipt of your letter dated October 31, 2000, which was submitted in response to our Final Decision letter No.154 dated September 7, 2000, issued to BlueLincs HMO Health Plan on Final Audit Report No. N5-00-98-045. Your request to use the reconciliation balance to recover the 1993, 1994 and 1995 Lost Investment Income charges to the Federal Employees Health Benefits Program is denied.

Under 1652.216-70 (b)(6) of the Federal Employees Health Benefits Acquisition Regulations, in the event a contract is not renewed, "neither the Government nor the carrier shall be entitled to any adjustment or claim for the difference between the subscription rates prior to rate reconciliation and the actual subscription rates." Since BlueLincs terminated its participation in the FEHBP, it is not entitled to the rate reconciliation balance.

Should you or members of your staff have questions concerning this issue, please contact Mary Saunders in the Insurance Planning and Evaluation Division on (202) 606-0745.

Sincerely,

Frank D. Titus
Assistant Director
for Insurance Programs

cc: David Lewis, Chief
Insurance Contracts Division III

Nancy Kichak, Director
Office of the Actuaries

EPSTEIN BECKER & GREEN, P.C.
ATTORNEYS AT LAW
1227 25TH STREET, N.W., STE. 700
WASHINGTON, D.C. 20037-1175
(202) 861-0900
FAX: (202) 296-2882

DIRECT:
(202) 861-1854

250 PARK AVENUE
NEW YORK, NEW YORK 10177-1211
(212) 351-4500

1875 CENTURY PARK EAST, STE. 500
LOS ANGELES, CALIFORNIA 90067-2506
(310) 556-8861

ONE LANDMARK SQUARE, STE. 1800
STAMFORD, CONNECTICUT 06901-2681
(203) 348-3737

THE LEGAL CENTER
ONE RIVERFRONT PLAZA, 7TH FLOOR
NEWARK, NEW JERSEY 07102-5480
(973) 642-1900

55 EAST MONROE STREET, 29TH FLOOR
CHICAGO, ILLINOIS 60603-5709
(312) 845-1999

75 STATE STREET, 27TH FLOOR
BOSTON, MASSACHUSETTS 02109-1813
(617) 342-4000

3399 PEACHTREE ROAD, N.E., SUITE 1400
ATLANTA, GEORGIA 30326-2834
(404) 812-5680

TWO EMBARCADERO CENTER, SUITE 1650
SAN FRANCISCO, CALIFORNIA 94111-3994
(415) 398-3500

PARK CENTRAL VII
12750 MERIT DRIVE, STE. 1320
DALLAS, TEXAS 75251-1219
(972) 628-2450

01 JUL 24 AM 9:31

July 20, 2001

**VIA FACSIMILE AND MAIL**

Abby L. Block
Assistant Director for Insurance Programs
Office of Personnel Management
1900 E Street, N.W., Room 3424
Washington, D.C. 20415-0001

Re: BlueLincs HMO Health Plan
Claim for Withheld Excess Contingency Reserves

Dear Ms. Block:

We represent BlueLincs HMO Health Plan ("BlueLincs"). On behalf of BlueLincs, we submit this certified claim under the Contract Disputes Act of 1978 seeking $314,587 in excess contingency reserve funds withheld by OPM in connection with an audit resolution.

In Final Decision No. 154, dated September 7, 2000 (a copy of which is attached), the Office of Personnel Management ("OPM") informed BlueLincs that, based on defective pricing issues identified in Final Audit Report No. N5-00-98-045, BlueLincs owed $312,867 in lost investment income ("LII") to the Federal Employees Health Benefits Program ("FEHBP"). The parties had reached a resolution regarding the principal amounts, but BlueLincs preserved the lost investment income issue for further consideration pending the outcome of OPM's appeal of a decision involving QualMed Plans for Health of New Mexico, Inc. OPM subsequently withheld $314,587 from a payment to BlueLincs of the plan's excess contingency reserves by paying BlueLincs only $265,413 of the total $580,000 available. *See* letter dated November 6, 2000, from Nancy H. Kichak, a copy of which is attached.

BlueLincs submits that OPM improperly withheld the excess contingency reserve funds because the LII claim was already offset by other contract funds held by OPM. Although we recognize that the Government's common law right of setoff permits it to collect contract debts by withholding other amounts due to the contractor, we submit that any OPM collection efforts

should have used the reconciliation balance, rather than the excess contingency reserves, to recover the lost investment income claim. In telephone conversations on October 2 and 6, 2000, Sherry Simon of your office informed Susan Furgerson of BlueLincs that OPM's contract year 2000 reconciliation produced a balance due to BlueLincs of $369,127 but that these funds would not be paid to BlueLincs because it was terminating its FEHBP contract. In subsequent correspondence, OPM has taken the position that the reconciliation balance cannot be used to pay off the LII claim because BlueLincs is not entitled to the rate reconciliation balance in accordance with FEHBAR § 1652.216-70(b)(6). *See* letter dated November 15, 2000 from Frank D. Titus, a copy of which is attached.

The Accounting and Price Adjustment clause at FEHBAR § 1652.216-70 provides that "neither the Government nor the Carrier shall be entitled to any adjustment or claim" for the differences between the proposed rates and the reconciled rates if the contract is not renewed. FEHBAR § 1652.216-70(b)(6). The FEHBAR clause precludes a positive contract adjustment or claim but it does not expressly prevent a contractor from satisfying an existing contract debt with the reconciliation funds. Nor does anything in the regulatory history indicate that this was OPM's intention.[1] [BlueLincs is not claiming that it is entitled to receive the reconciliation balance but rather that OPM's retention of the balance must be considered to satisfy OPM's LII claim against BlueLincs.[2]]

in the regulation

Both legal authority and practical realities dictate that the FEHBAR clause should not be interpreted to prevent a contractor from offsetting an OPM claim with the reconciliation balance. The clause is in essence a forfeiture clause, since the contractor loses its right to receive funds to which it would otherwise be entitled. There is a long-standing principle that the law abhors a forfeiture. Knickerbocker Life Ins. Co. v. Norton, 96 U.S. (6 Otto) 234, 242 (1878). Accordingly, such clauses are interpreted strictly and narrowly. See Tobin v. United States, 59 F. Supp. 410 (Ct. Cl. 1945) (liquidated damages provisions will be strictly construed). Moreover, a law that is

---

[1] In its preamble to the final rulemaking that included this clause, OPM focussed more on the practical difficulties of completing the reconciliation process with terminating plans.

> OPM's experience has been that it is difficult to get adequate data from plans when they have terminated. Further, in the event a plan goes out of business, there are no rates to reconcile. In the opinion of OPM, the most reasonable solution is for both the Government and the carrier to bear the risk of the carrier's termination.

55 Fed. Reg. 27406, 27410 (July 2, 1990). In circumstances such as these, where OPM is not only able to but has completed performing a reconciliation, the funds should be available to offset any actual or prospective liability. This would include not only OPM's LII claim but also any other findings from audits of contract years 1999 and 2000 that are performed subsequent to the termination.

[2] We recognize that the clause could be construed to prevent BlueLincs from claiming the right to receive a payout of the reconciliation balance if it prevailed in its appeal. However, BlueLincs proposed to relinquish its right to appeal the Final Decision on the LII claim if OPM would pay BlueLincs $580,264, the full amount of the excess contingency reserves. Of course, the unabsorbed reconciliation balance should be available to satisfy any BlueLincs liability for subsequent contract year audits and BlueLincs specifically reserves the right to take that position in the future.

Abby L. Block
July 20, 2001
Page 3

meant to take away a common law right, such as the right of setoff, must state this explicitly. Sutherland Statutory Construction §§ 61.01, 61.02 (5th ed.). Since the clause does not expressly include offsets, they may not be prohibited.

Finally, it would be inequitable to prevent the contractor from using the funds it was underpaid at the same time that OPM seeks to collect funds that it claims to have overpaid in other years. Thus, it was an abuse of discretion for OPM to withhold the contingency reserve funds when this results in a double recovery of the LII claim, once from the rate reconciliation balance and once from the contingency reserves.

We request that OPM issue a final decision promptly so that BlueLincs may appeal the contested withholding of the excess contingency reserves.

Very truly yours,

Daniel Abrahams

Daniel B. Abrahams
Constance A. Wilkinson

cc: Jacqueline Haglund, Esq.

**Certification Pursuant to the Contract Disputes Act**

I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

Jacqueline Haglund
Jacqueline Haglund
General Counsel
BlueLincs HMO
Date: July 18, 2001

CAW Rec'd 9/13/00

United States
**Office of**
**Personnel Management**

Washington, D.C. 20415

In Reply Refer To: Your Reference:

Susan Furgerson, CPA
Vice President, Finance
Bluelincs HMO Health Plan
1400 South Boston
PO Box 21128
Tulsa, Oklahoma 74121-1128

SEP 7 2000

**Final Decision No. 154**

Dear Ms. Furgerson:

I am writing about Final Audit Report No. N5-00-98-045 dated April 12, 2000, on Bluelincs HMO Health Plan. We have been unable to resolve the "Lost Investment Income" issues for contract years 1993, 1994 and 1995. This letter conveys the Contracting Officer's position as it relates to those issues.

While a resolution was reached on the defective pricing issues for contract years 1993, 1994 and 1995, I find that the settlement amounts constitute overcharges for those years. We have determined that in accordance with the standard contract, the Federal Employees Health Benefits Program (FEHBP) is entitled to a recovery of lost investment income calculated back to the date of the overpayment, plus interest accrued up to the time the funds are returned to the FEHBP.

Under Section 5.9(e) of the standard contract and the FEHBAR 1652.215-70, the FEHBP is entitled to recovery of lost investment income charges totaling $312,867. Copies of worksheets on the lost investment income calculations are enclosed.

My decision will be final unless you furnish a written notice of appeal to me and the Armed Services Board of Contract Appeals within 90 days of receipt of this decision, or, you file suit in the United States Court of Claims within 12 months of receipt of this decision. You or an attorney acting on your behalf should sign the appeal notice. It should clearly indicate that an appeal is intended, refer to this decision, and identify the contract by number. The notice of appeal should include a statement of the reasons why you consider this decision erroneous.

Should you or members of your staff have questions concerning these audit issues, please contact Mary Saunders in the Insurance Planning and Evaluation Division at (202) 606-0745.

Sincerely,

Frank D. Titus
Assistant Director
for Insurance Program

Enclosures

cc: David Lewis, Chief
Insurance Contracts Division III

Connie Wilkinson, Legal Counsel
for Bluelincs

**LOST INVESTMENT INCOME**

**QUESTIONED AMOUNTS**

| Audit Findings: | 1993 | 1994 | 1995 | 1996 | 1997 | 1998 | 1999 | 2000 11-Aug | Total |
|---|---|---|---|---|---|---|---|---|---|
| Defective Pricing | $69,796 | $151,325 | | $0 | $0 | $0 | $0 | $0 | $221,121 |
| Totals (per year): | $69,796 | $151,325 | | $0 | $0 | $0 | $0 | $0 | $221,121 |
| Cumulative Totals: | $69,796 | $221,121 | $221,121 | $221,121 | $221,121 | $221,121 | $221,121 | $0 | |
| Avg. Interest Rate (per year): | 6.063% | 6.2500% | 7.2500% | 6.4375% | 6.5630% | 6.1250% | 5.7500% | 7.0000% | |
| Interest on prior Years Findings: | 0 | $4,362 | $16,031 | $14,235 | $14,512 | $13,544 | $12,714 | $9,502 | $84,901 |
| Current Years Interest: | $2,116 | $4,729 | $0 | $0 | $0 | $0 | $0 | $0 | $6,845 |
| Total Cumulative Interest: | $2,116 | $9,091 | $16,031 | $14,235 | $14,512 | $13,544 | $12,714 | $9,502 | $91,745 |

## LOST INVESTMENT INCOME

## QUESTIONED AMOUNTS

| Audit Findings: | 1994 | 1995 | 1996 | 1997 | 1998 | 1999 07-Oct | 2000 | Total |
|---|---|---|---|---|---|---|---|---|
| Defective Pricing | $438,713 | $266,015 | $0 | $0 | $0 | $0 | $0 | $704,728 |
| Totals (per year): | $438,713 | $266,015 | $0 | $0 | | $0 | | $704,728 |
| Cumulative Totals: | $438,713 | $704,728 | $704,728 | $704,728 | $704,728 | $704,728 | $0 | $704,728 |
| Avg. Interest Rate (per year): | 6.2500% | 7.2500% | 6.4375% | 6.5630% | 6.1250% | 5.7500% | 0.0000% | |
| Interest on prior Years Findings: | $0 | $31,807 | $45,367 | $46,251 | $43,165 | $31,179 | $0 | $197,769 |
| Current Years Interest: | $13,710 | $9,643 | $0 | $0 | $0 | $0 | $0 | $23,353 |
| Total Cumulative Interest: | $13,710 | $41,450 | $45,367 | $46,251 | $43,165 | $31,179 | $0 | $221,122 |

RECEIVED
NOV 13 2000
V.P. FINANCE

United States
**Office of**
**Personnel Management**

Washington, D.C. 20415-0001

NOV 6 2000

In Reply Refer To:

Your Reference:

Ms. Susan Furgerson
BlueLincs HMO
1400 S. Boston Avenue
Tulsa, OK 74119

**Re: BlueLincs HMO (Code N5)**

Dear Ms. Furgerson:

You have informed us that you will be withdrawing from the FEHB program. Therefore, we have not performed a reconciliation of your 2000 contract rates; however, we will settle the outstanding amount owed to you due to the 2000 rate reduction.

**Contingency reserve payment**

Your 2000 proposed rates were reduced by $5.51 per self enrollment and $12.11 per family enrollment in order to generate a contingency reserve payment. We have determined the precise amount that this reduction generated by multiplying the amount of the rate reduction by the plan's actual March 31, 2000 enrollment. See the enclosed calculations.

The result is OPM owes you $580,000. But because of an outstanding audit issue, OPM will hold $314,587 until the audit has been resolved. OPM will pay the balance owed, $265,413, from the contingency reserve.

If you have any questions about this letter, please contact Bryant Cook at (202) 606-0722.

Sincerely,

Nancy H. Kichak

Nancy H. Kichak
Director
Office of Actuaries

Enclosures

cc: Janeen Ball

# Computation of Payment for Dropped Plan

## BlueLincs HMO (N5)

| | | Self | Family | Total |
|---|---|---|---|---|
| | Plan's Enrollment (March 31, 2000) | 846 | 1458 | |
| 1 | Reduction in 2000 Rates for CR Payment | $5.51 | $12.11 | |
| 2 | March 31, 2000 Enrollment | 846 | 1458 | |
| 3 | Lost Premium {(1)X(2)X26} | $121,197.96 | $459,065.88 | |
| 4 | Total Lost Premium | | | $580,263.84 |
| 5 | Reduction in 2000 Rates to Recover Amount Due OPM | | | |
| 6 | March 31, 2000 Enrollment | 846 | 1458 | |
| 7 | Amount Recovered {(5)X(6)X26} | $0.00 | $0.00 | |
| 8 | Total Recovered | | | $0.00 |
| 9 | Actual Amount Owed OPM | | | |
| 10 | Total Due OPM | | | $0.00 |
| 11 | Increase in 2000 Rates to Pay Amount Due Plan | | | |
| 12 | March 31, 2000 Enrollment | 846 | 1458 | |
| 13 | Amount Paid | $0.00 | $0.00 | |
| 14 | Total Amount Paid | | | $0.00 |
| 15 | Actual Amount Owed Plan | | | |
| 16 | Total Due Plan | | | $0.00 |
| 17 | Brochure Printing Costs | | | $236.00 |
| 18 | Other Outstanding Amounts Due Plan | | | |
| 19 | Other Outstanding Amounts Due OPM-Penalty for Delayed Brochures | | | $500.00 |
| 20 | Total Due Plan {(4)+(16)+(17)+(18)} | | | $580,499.84 |
| 21 | Total Due OPM {(10)+(19)} | | | $500.00 |
| 22 | **Net Due Plan/(OPM) {(20)-(21)}** | | | **$579,999.84** |

Rec'd 11/16/00 DBA

United States
**Office of Personnel Management**

Washington, D.C. 20415

In Reply Refer To: Your Reference:

NOV 15 [illegible]

Daniel B. Abrahams, Attorney
Epstein, Becker & Green, P.C.
Attorneys at Law
1227 25th Street, NW, STE. 700
Washington, D.C. 20037-1175

Dear Mr. Abrahams:

We acknowledge receipt of your letter dated October 31, 2000, which was submitted in response to our Final Decision letter No.154 dated September 7, 2000, issued to BlueLincs HMO Health Plan on Final Audit Report No. N5-00-98-045. Your request to use the reconciliation balance to recover the 1993, 1994 and 1995 Lost Investment Income charges to the Federal Employees Health Benefits Program is denied.

Under 1652.216-70 (b)(6) of the Federal Employees Health Benefits Acquisition Regulations, in the event a contract is not renewed, "neither the Government nor the carrier shall be entitled to any adjustment or claim for the difference between the subscription rates prior to rate reconciliation and the actual subscription rates." Since BlueLincs terminated its participation in the FEHBP, it is not entitled to the rate reconciliation balance.

Should you or members of your staff have questions concerning this issue, please contact Mary Saunders in the Insurance Planning and Evaluation Division on (202) 606-0745.

Sincerely,

Frank D. Titus

Frank D. Titus
Assistant Director
for Insurance Programs

Payoffs same

I have reviewed the plan's request and reviewed request & believe that OPM is correct. [illegible]

cc: David Lewis, Chief
Insurance Contracts Division III

Nancy Kichak, Director
Office of the Actuaries

EPSTEIN BECKER & GREEN, P.C.
ATTORNEYS AT LAW
1227 25TH STREET, N.W., STE. 700
WASHINGTON, D.C. 20037-1175
(202) 861-0900
FAX: (202) 296-2882

DIRECT:
(202) 861-1864

250 PARK AVENUE
NEW YORK, NEW YORK 10177-1211
(212) 351-4500

1875 CENTURY PARK EAST, STE. 500
LOS ANGELES, CALIFORNIA 90067-2506
(310) 556-8861

ONE LANDMARK SQUARE, STE. 1800
STAMFORD, CONNECTICUT 06901-2681
(203) 348-3737

THE LEGAL CENTER
ONE RIVERFRONT PLAZA, 7TH FLOOR
NEWARK, NEW JERSEY 07102-5490
(973) 642 1900

55 EAST MONROE STREET, 29TH FLOOR
CHICAGO, ILLINOIS 60603-5709
(312) 845-1999

75 STATE STREET, 27TH FLOOR
BOSTON, MASSACHUSETTS 02109-1813
(617) 342-4000

3399 PEACHTREE ROAD, N.E., SUITE 1400
ATLANTA, GEORGIA 30326-2834
(404) 812-5680

TWO EMBARCADERO CENTER, SUITE 1650
SAN FRANCISCO, CALIFORNIA 94111-3994
(415) 398-3500

PARK CENTRAL VII
12750 MERIT DRIVE, STE. 1320
DALLAS, TEXAS 75251-1319
(972) 628-2450

October 31, 2000

**VIA FACSIMILE**

Frank D. Titus
Assistant Director for Insurance Programs
Office of Personnel Management
Washington, D.C. 20415

Re: BlueLincs HMO Health Plan
Final Decision No. 154

Dear Mr. Titus:

We represent BlueLincs HMO Health Plan ("BlueLincs"). We request that you review and reconsider OPM's position regarding funds it intends to withhold from BlueLincs in connection with an audit resolution.

In Final Decision No. 154, dated September 7, 2000, the Office of Personnel Management ("OPM") informed BlueLincs that, based on defective pricing issues identified in Final Audit Report No. N5-00-98-045, BlueLincs owes $312,867 in lost investment income ("LII") to the Federal Employees Health Benefits Program ("FEHBP"). The parties had reached a resolution regarding the principal amounts, but BlueLincs has preserved for further consideration the lost investment income issue pending the outcome of OPM's appeal involving QualMed Plans for Health of New Mexico, Inc.

In telephone conversations on October 2 and 6, 2000, Sherry Simon of your office informed Susan Furgerson of BlueLincs that OPM intended to withhold the full amount of the LII claim from a payment to be made to draw down excess contingency reserves, paying BlueLincs only $211,166 of the total $580,264 available. Ms. Simon also stated that OPM's contract year 2000 reconciliation produced a balance due to BlueLincs of $369,127 but that these funds would not be paid to BlueLincs because it was terminating its FEHBP contract. Although we recognize that the Government's common law right of setoff permits it to collect contract debts by withholding other amounts due to the contractor, we submit that any OPM collection efforts

DC:132707.1

should use the reconciliation balance, rather than the excess contingency reserves, to recover the lost investment income claim. In subsequent conversations with Sherry Simon, she told me that the LII claim could not be offset against the reconciliation balance because, in accordance with FEHBAR § 1652.216-70, OPM has no obligation to pay BlueLincs the reconciliation balance.

The Accounting and Price Adjustment clause at FEHBAR § 1652.216-70 provides that "neither the Government nor the Carrier shall be entitled to any adjustment or claim" for the differences between the proposed rates and the reconciled rates if the contract is not renewed. FEHBAR §1652.216-70(b)(6). The FEHBAR clause precludes a positive contract adjustment or claim but it does not expressly prevent a contractor from satisfying an existing contract debt with the reconciliation funds. Nor does anything in the regulatory history indicate that this was OPM's intention.[1] We emphasize that BlueLincs is not claiming that it is entitled to receive the reconciliation balance but rather that OPM's retention of the balance must be considered to satisfy OPM's LII claim against BlueLincs.

Both legal authority and practical realities dictate that the FEHBAR clause should not be interpreted to prevent a contractor from offsetting an OPM claim with the reconciliation balance. The clause is in essence a forfeiture clause, since the contractor loses its right to receive funds to which it would otherwise be entitled. There is a long-standing principle that the law abhors a forfeiture. Knickerbocker Life Ins. Co. v. Norton, 96 U.S. (6 Otto) 234, 242 (1878). Accordingly, such clauses are interpreted strictly and narrowly. See Tobin v. United States, 59 F. Supp. 410 (Ct. Cl. 1945) (liquidated damages provisions will be strictly construed). Moreover, a law that is meant to take away a common law right, such as the right of setoff, must state this explicitly. Sutherland Statutory Construction §§ 61.01, 61.02 (5th ed.). Since the clause does not expressly include offsets, they must not be prohibited. Finally, it would be inequitable to prevent the contractor from using the funds it was underpaid at the same time that OPM seeks to collect funds that it claims to have overpaid in other years.

We recognize that the clause could be construed to prevent BlueLincs from claiming the right to receive a payout of the reconciliation balance if it prevailed in its appeal. Therefore, BlueLincs proposes that the parties compromise the LII claim in the following manner: BlueLincs will "pay" the claim from the reconciliation balance and it will relinquish its right to appeal the

---

[1] In its preamble to the final rulemaking that included this clause, OPM focussed more on the practical difficulties of completing the reconciliation process with terminating plans.

> OPM's experience has been that it is difficult to get adequate data from plans when they have terminated. Further, in the event a plan goes out of business, there are no rates to reconcile. In the opinion of OPM, the most reasonable solution is for both the Government and the carrier to bear the risk of the carrier's termination.

55 Fed. Reg. 27406, 27410 (July 2, 1990). In circumstances such as these, where OPM is not only able to but has performed a reconciliation, the funds should be available to offset any actual or prospective liability. This would include not only OPM's LII claim but also any other findings from audits of contract years 1999 and 2000 that are performed subsequent to the termination.

Final Decision. Accordingly, OPM would pay BlueLincs $580,264, the full amount of the excess contingency reserves. Of course, the remaining reconciliation balance should be available to satisfy any BlueLincs liability for subsequent contract year audits.

As it stands, the forfeiture of funds is fundamentally unfair. BlueLincs lost money on the FEHBP contract and now OPM would ask it to lose more. This result is certainly not compelled by the FEHBAR. We respectfully request that you take equitable action to remedy this wrong.

We would be happy to meet with you to discuss a resolution of this issue or to provide any additional information you would find helpful.

Very truly yours,

Daniel Abrahams

Daniel B. Abrahams
Constance A. Wilkinson

cc: Jacqueline Haglund
John McCart
Sherry Simon

DC:132707.1

EPSTEIN BECKER & GREEN, P.C.
ATTORNEYS AT LAW
1227 25th STREET, N.W., SUITE 700
WASHINGTON, D.C. 20037-1175
(202) 861-0900
FAX (202) 296-2882
WWW.EBGLAW.COM

250 PARK AVENUE
NEW YORK, NEW YORK 10177-1211
(212) 351-4500

1875 CENTURY PARK EAST, SUITE 500
LOS ANGELES, CALIFORNIA 90067-2506
(310) 556-8861

ONE LANDMARK SQUARE, SUITE 1800
STAMFORD, CONNECTICUT 06901-2681
(203) 348-3737

TWO GATEWAY CENTER, 12TH FLOOR
NEWARK, NEW JERSEY 07102-5003
(973) 642-1900

PARK CENTRAL VII
12750 MERIT DRIVE, SUITE 1320
DALLAS, TEXAS 75251-1219
(972) 628-2430

75 STATE STREET, 27TH FLOOR
BOSTON, MASSACHUSETTS 02109-1813
(617) 342-4000

3300 PEACHTREE ROAD, N.E., SUITE 1400
ATLANTA, GEORGIA 30326-2834
(404) 812-5600

TWO EMBARCADERO CENTER, SUITE 1650
SAN FRANCISCO, CALIFORNIA 94111-3994
(415) 398-3500

150 NORTH MICHIGAN AVENUE, SUITE 420
CHICAGO, ILLINOIS 60601-7553
(312) 499-1400

DIRECT:
(202) 861-1378
CWILKINSON@EBGLAW.COM

November 2, 2001

<u>VIA FACSIMILE AND REGULAR MAIL</u>

Franklin E. White, Jr.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

Re: <u>GHS Health Maintenance Organization, Inc.</u>

Dear Mr. White:

This letter confirms your recent telephone conversation with Dan Abrahams, in which he indicated that it is our intention to consolidate an appeal of BlueLinc's claim for the excess contingency reserve with the appeal of Final Decision No. 154 at issue in the case referenced above. Please clarify for us whether OPM intends to issue a final decision on the excess contingency reserve claim or whether we should treat the claim as "deemed denied" now that the 60-day timeframe for a decision on the claim has elapsed.

Very truly yours,

Constance A. Wilkinson

Constance A. Wilkinson

cc: Jacqueline Haglund, Esq.

DC 173869 1

EPSTEIN BECKER & GREEN, P.C.
ATTORNEYS AT LAW
1227 25TH STREET, N.W., SUITE 700
WASHINGTON, D.C. 20037-1175
(202) 861-0900
FAX: (202) 296-2882
WWW.EBGLAW.COM

DIRECT:
(202) 861-1854
DABRAHAMS@EBGLAW.COM

250 PARK AVENUE
NEW YORK, NEW YORK 10177-1211
(212) 351-4500

1875 CENTURY PARK EAST, SUITE 500
LOS ANGELES, CALIFORNIA 90067-2506
(310) 556-8861

ONE LANDMARK SQUARE, SUITE 1800
STAMFORD, CONNECTICUT 06901-2681
(203) 348-3737

TWO GATEWAY CENTER, 12TH FLOOR
NEWARK, NEW JERSEY 07102-5003
(973) 642-1900

PARK CENTRAL VII
12750 MERIT DRIVE, SUITE 1320
DALLAS, TEXAS 75251-1219
(972) 628-2450

75 STATE STREET, 27TH FLOOR
BOSTON, MASSACHUSETTS 02109-1813
(617) 342-4000

3399 PEACHTREE ROAD, N.E., SUITE 1400
ATLANTA, GEORGIA 30326-2834
(404) 812-5680

TWO EMBARCADERO CENTER, SUITE 1650
SAN FRANCISCO, CALIFORNIA 94111-3994
(415) 398-3500

150 NORTH MICHIGAN AVENUE, SUITE 420
CHICAGO, ILLINOIS 60601-7553
(312) 499-1400

March 7, 2002

RECEIVED
OFFICE OF
THE GENERAL COUNSEL
02 MAR 27 AM 10: 21

**VIA FACSIMILE AND CERTIFIED MAIL**

Mr. David Lewis
Contracting Officer
Office of Insurance Programs
Office of Personnel Management
1900 E Street, N.W., Room 3459
Washington, D.C. 20415-0001

Re: Supplemental Claim of Blue Cross Blue Shield of Oklahoma's GHS Health Maintenance Organization, Inc., d/b/a BlueLincs HMO

Dear Mr. Lewis:

We represent Blue Cross Blue Shield of Oklahoma's GHS Health Maintenance Organization (otherwise known as "BlueLincs"). On behalf of BlueLincs, we hereby submit a supplemental certified claim under the Contract Disputes Act of 1978 ("CDA") in the amount of $54,540.00. A consolidated CDA certification for this claim and the prior amount claimed on July 20, 2001, together totaling $369,127, is attached. The basis for the claim is set forth below.

On or about July 20, 2001, BlueLincs submitted a certified claim in the amount of $314,587 to OPM. That claim was in reference to Final Decision No. 154 where OPM asserted a right to offset $312,867 in lost investment income from BlueLincs from the excess contingency reserve funds. BlueLincs claimed that the monies should be offset against the surplus balance arising from the 2000 rate reconciliation rather than being collected from the excess contingency reserve funds. OPM rejected BlueLincs' contentions but never rendered a final decision on the July 20, 2001 claim.

## Certification Pursuant to the Contract Disputes Act

I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

Jacqueline Haglund

Jacqueline Haglund
General Counsel
GHS Health Maintenance Organization, Inc.,
d/b/a BlueLincs HMO and Blue Cross Blue
Shield of Oklahoma

Date: March 7, 2002