# United States Court of Federal Claims

| | |
|---|---|
| **GHS Health Maintenance Organization, Inc., d/b/a BlueLincs HMO, Texas Health Choice, L.C., and Scott & White Health Plan,** *Plaintiffs,* | **No. 01-517C** |
| *v.* | **Judge Marian Blank Horn** |
| **United States,** *Defendant.* | |

## Joint Stipulation of Facts

Pursuant to this Court's Order, dated September 19, 2005, Plaintiffs GHS Health Maintenance Organization, Inc. d/b/a BlueLincs HMO ("BlueLincs"), Texas Health Choice, L.C. ("Texas Health"), and Scott & White Health Plan ("Scott & White"), and Defendant United States of America submit the following Joint Stipulation of Facts for purposes of their respective motions for summary judgment:

### Facts Common to All Parties

1. The United States Office of Personnel Management ("OPM") is the federal contracting agency responsible for administration of the Federal Employees Health Benefits

Program under the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901 *et seq*.

2. BlueLincs, Texas Health, and Scott & White (collectively, the "Plans") each entered into contract (the "Contracts") with OPM to provide health benefits to eligible federal enrollees and their families through the Federal Employees Health Benefits Program (the "Program").

3. The Contracts are enforceable under FEHBA and the Contract Disputes Act, 41 U.S.C. § 601 *et seq*.

4. A contractor under the Program provides a health benefit plan to enrolled federal enrollees and their families and is compensated by premium payments comprised of a Government contribution and an enrollee contribution.

5. OPM annually negotiates with each contractor the benefits and premiums for the next contract year, which begins January 1 of the next calendar year. Premiums may be negotiated on the basis of experience rating or community rating. The process begins each May, when contractors propose to OPM premium rates for the upcoming contract year. The premium rates proposed represent the contractors' estimates of what the contractors will charge similarly sized subscriber groups ("SSSGs") during the upcoming calendar year.

6. Rate negotiations for a given calendar year typically take place in June, July and August so that rates are finalized prior to the open season for the given year. During that year, OPM remits the premium payment at that agreed-upon rate for the duration of that contract year.

7. Community rated health maintenance organizations are at risk when they determine their rates. If they charge too much, they are at risk of losing enrollees in the competitive open season process. If they charge too little, they may not earn enough premium income to meet the covered health services of the group. It is the carrier's responsibility to project the appropriate amount to charge for covered services in advance of the year in which the services will be provided.

8. Generally, beginning in April of the contract year, contractors and OPM engage in a process to reconcile the current year's premium rates (which were estimates of what the contractor's SSSG rates would be) with the premium rates the contractor is actually charging an SSSG.

9. The Office of the Actuaries does not obtain all detailed records that may be maintained at the carrier's place of business. OPM relies on the audit feature of the FEHB to provide an incentive for the carriers to accurately represent the data that drive their rates in the first instance.

10. To the extent an audit of any plan results in findings regarding the calculations or representations relevant to negotiation or reconciliation figures, those figures are subject to correction, adjustment or claim by OPM.

11. In years when the contract is renewed, if it is determined that the rates currently in force were higher than the rates actually charged to the SSSG, the contractor pays the Government the difference. If it is determined that the rates currently in force were lower than the rates actually charged to the SSSG, the Government pays the contractor the difference.

12. With respect to years when the contract is not renewed, neither party is paid the difference between the rates currently in force and the rates actually charged to the SSSG. OPM takes the position that this result is required by 48 C.F.R § 1652.216-70, which requires that the following clause be included in all Program contracts:

> In the event this contract is not renewed, neither the Government nor the Carrier shall be entitled to any adjustment or claim for the difference between the subscription rates prior to rate reconciliation and the actual subscription rates.

48 C.F.R § 1652.216-70(b)(6). This clause appears in the contracts of BlueLincs, Texas Health, and Scott & White. The presence of the clause was not negotiated.

13. On October 20, 1989, OPM published a proposed rulemaking action in accordance with the Administrative Procedure Act, 5 U.S.C. § 553, with regard to the Federal Employees Health Benefits Acquisition Regulation: Revision of Contract Clauses

and Community Rating Practices. 54 Fed Reg. 43089-01. This regulation established the nonreconciliation in year of nonrenewal provision. OPM accepted public comment on these regulations during the period October 1989 to January 1990. On July 2, 1990, OPM published its final rulemaking action at 55 Fed Reg. 27406-01.

**Facts Specific to BlueLincs**

14. BlueLincs is a Health Maintenance Organization ("HMO") licensed to do business in the State of Oklahoma.

15. OPM and BlueLincs entered into Contract No. CS 2074 (the "OPM/BlueLincs Contract" in 1986 under which BlueLincs agreed to provide a health benefit plan to federal employees, annuitants and their dependents in Oklahoma. The OPM/BlueLincs Contract was renewed and amended several times through the contract year 2000. (BlueLincs Appendix 88 *et seq*. (hereafter, "BA__")).

16. By letter dated April 26, 2000, BlueLincs submitted to OPM documentation for the rate reconciliation process for the contract year 2000. (BA528-29)

17. By letter dated May 2, 2000, BlueLincs submitted to OPM a revised proposal for the rate reconciliation process for the contract year 2000. (BA530-31)

18. During the 2000 contract year, OPM calculated a reconciliation amount with respect to BlueLincs. Assuming the plan would be renewed, OPM concluded that BlueLincs was owed $364,962 for 2000. (BA502)

19. By letter dated July 14, 2000, BlueLincs informed OPM that BlueLincs "will no longer be offering BlueLincs HMO to federal employees for 2001." (BA493)

20. By letter dated September 7, 2000, OPM issued a contracting officer's final Decision No. 154 claiming entitlement to $312,867 in lost investment income under a prior settlement between OPM and BlueLincs. (BA498-501)

21. By letter dated October 31, 2000, BlueLincs, through its counsel, requested that OPM offset its lost investment income claim against the funds in the rate reconciliation calculation. (BA503-A505)

22. By letter dated November 6, 2000, Nancy Kichak, Director of the Office of the Actuaries at OPM, informed BlueLincs that because BlueLincs "informed us that you will be withdrawing from the FEHB Program … we have not performed a reconciliation of your 2000 contract rates." (BA506-BA507)

23. By letter dated November 15, 2000, Frank D. Titus, Assistant Director for Insurance Programs at OPM, informed BlueLincs' that "Your request to use the reconciliation balance to recover the 1993, 1994, and 1995 Lost Investment Income charges

to the Federal Employees Health Benefit Program is denied." Mr. Titus based his conclusion upon the regulation, section 1652.216-70(b)(6). (BA509)

24. By letter dated July 20, 2001, BlueLincs, through its counsel, submitted a certified claim under the Contract Disputes Act to the contracting officer "seeking $314,587 in excess contingency reserve funds withheld by OPM in connection with an audit resolution." To date, OPM has not responded to that claim. (BA510-BA513)

25. By letter dated March 7, 2002, BlueLincs, through its counsel, submitted a certified supplemental claim to the contracting officer under the Contract Disputes Act. To date, OPM has not responded to that claim. (BA525-BA527)

26. BlueLincs did not go out of business during the final year of performance under the OPM/BlueLincs Contract.

**Facts Specific to Texas Health**

27. Texas Health is licensed as an HMO in Texas.

28. During the 2001 contract year, OPM calculated a reconciliation amount with respect to Texas Health. Assuming the plan would be renewed, OPM concluded that Texas Health was owed $622,246 for 2001. OPM paid Texas Health this sum. (Texas Health Appendix ("THA")267).

29. Subsequently, Texas Health gave OPM written notice of nonrenewal of the Contract. (THA259).

30. On October 15, 2001, Ms. Nancy Kichak of OPM's Office of Actuaries sent a letter to Ms. Carole Henry at Texas Health requesting that Texas Health return the $622,246 that was paid to Texas Health pursuant to the 2001 rate reconciliation performed earlier in the year. (THA267).

31. OPM subsequently recouped the $622,246 through a reduction of Texas Health's December 2001 premium.

32. In support of its recoupment, OPM relied on Section 3.2(b)(6) of the Contract, the clause required by the regulation at 48 C.F.R § 1652-216-70(b)(6).

33. By letter dated January 8, 2002, Texas Health filed a certified claim with the OPM Contracting Officer demanding repayment of the $622,246. (THA270).

34. OPM did not respond to Texas Health's January 8, 2002 letter.

35. Texas Health did not go out of business during the 2001 Contract year.

**Facts Specific to Scott & White**

36. Scott & White provided health benefits to federal employees in Texas as part of the Program.

37. In July 1999, OPM calculated a reconciliation amount with respect to Scott & White's 1999 contract year.

38. In July 1999, OPM's Office of the Actuary informed Scott & White of the exact amount owed to Scott & White from the 1999 rate reconciliation process. It stated:

"The result of this reconciliation . . . is that your plan is due $5,461,752. Due to an unresolved audit issue, OPM will not be making a contingency reserve payment to you for this amount." (Scott & White Appendix ("SWA") 184)

39. Of the total $5,461,752 due to Scott & White, $3,625,782 resulted from the 1999 rate reconciliation process.

40. If Scott & White had renewed its contract for the year 2000, the government would have paid Scott & White $3,625,782 for the benefits provided in 1999.

41. Scott & White informed OPM in September 1999 that it would not renew its contract with the government for the 2000 contract year. (SWA241)

42. For this reason, OPM refused to pay Scott & White the $3,625,782 that would otherwise have been due from the 1999 reconciliation.

43. To support its refusal to pay, OPM relies on Clause 3.2(b)(6) of its contract with Scott & White and 48 C.F.R. § 1652.216-70(b)(6).

44. By letter dated October 10, 2000, Scott & White filed a certified claim with the OPM Contracting Officer demanding payment of the $3,625,782. (SWA246).

45. OPM did not respond to Scott & White's October 10, 2000 letter.

46. Scott & White remains in business.

**Statement of Fact Not Agreed Upon**

47. Plaintiff BlueLincs and Defendant United States were unable to agree to the following statement of fact which may be at issue in this case::

a. Plaintiff BlueLincs proposed statement of fact: In telephone conversations on October 2 and 6, 2000, Sherry Simon of OPM's Office of Insurance Programs informed Susan Furgerson of BlueLincs that OPM's contract year 2000 rate reconciliation calculation produced a balance due to BlueLincs of $369,127 but that OPM would not pay BlueLincs because BlueLincs had given notice that it would terminate its FEHBP contract. (BA503)

b. Defendant United States assertion: Defendant has little, if any information about the substance of the telephone conversations in October 2000 between representatives of OPM and BlueLincs relating to these matters. In any event, even if OPM had performed a final calculation of a reconciliation balance, and even if an OPM representative made statements about whether OPM would pay BlueLincs or not, no Government official can obligate the United States to pay money where it is not permitted by statute or regulation.

Respectfully submitted,

/s/ Michael S. Nadel

Michael S. Nadel
McDermott Will & Emery LLP
600 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 756-8000

*Attorneys for Plaintiffs*
*Texas Health Choice, L.C.*
*and Scott & White Health Plan*

/s/ Daniel B. Abrahams

Daniel B. Abrahams
Epstein Becker & Green, P.C.
1227 25th Street, N.W.
Suite 700
Washington D.C. 20037
(202) 861-0900

*Attorneys for Plaintiff*
*GHS Health Maintenance Organization, Inc.*
*d/b/a BlueLincs HMO*

Peter D. Keisler
Assistant Attorney General

/s/ David M. Cohen

David M. Cohen
Director

/s/ Jane W. Vanneman

Jane W. Vanneman
U.S. Department of Justice
1100 L Street, N.W.
8th Floor
Washington, D.C. 20530
(202) 307-1011

*Attorneys for Defendant*
*United States*