**United States Court of Federal Claims**

| | |
|---|---|
| **GHS Health Maintenance Organization, Inc., d/b/a BlueLincs HMO, Texas Health Choice, L.C., and Scott & White Health Plan,** **Plaintiffs,** **v.** **United States,** **Defendant.** | **No. 01-517C** **Judge Marian Blank Horn** |

**PLAINTIFF GHS HEALTH MAINTENANCE ORGANIZATION, INC.'S REPLY BRIEF**

Daniel B. Abrahams
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Suite 700
Washington D.C. 20037
PHONE: (202) 861-0900
FAX: (202) 296-2882
dabrahams@ebglaw.com

Of Counsel:

Constance A. Wilkinson
Michael D. Maloney
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Suite 700
Washington D.C. 20037
PHONE: (202) 861-0900
FAX: (202) 296-2882

## Table of Contents

**I. INTRODUCTION** ........ 1

**II. STATEMENT OF THE CASE** ........ **2**

- **A. The Final Year Regulation does not permit OPM to forego a rate reconciliation in the final year when the contract is not renewed.** ........ 2
- **B. The Final Year Regulation does not relieve carriers like BlueLincs of the requirement to maintain adequate data.** ........ 4
- **C. BlueLincs' counsel filed comments objecting to the Final Year Regulation prior to its promulgation.** ........ 4
- **D. The Final Year Regulation does not place the risk equally on OPM and the carrier in the event of non-renewal.** ........ 5
- **E. The accepted rationales for the Final Year Regulation do not include the *post hoc* assertions of the Government.** ........ 8

**III. ARGUMENT** ........ 9

- **A. The Final Year Regulation conflicts with and violates the plain words of the statute.** ........ 9
- **B. As applied to BlueLincs, the Final Year Regulation is invalid.** ........ 15
- **C. OPM breached its Contract with BlueLincs** ........ 16
- **D. BlueLincs did not waive its right to object to the Final Year Regulation or the clause in the OPM/BlueLincs Contract.** ........ 17
- **E. The doctrine of laches does not bar BlueLincs' claims here.** ........ 18
- **F. The statute of limitations does not bar BlueLincs' claim here.** ........ 19
- **G. It is unfair that OPM should reap a windfall at BlueLincs' expense.** ........ 20

**IV. CONCLUSION** ........ 21

## Table of Authorities

### FEDERAL CASES

*Camp v. Pitts*, 411 U.S. 138 (1973) ....................8

*Cecile Industries, Inc. v. Cheney*, 995 F.2d 1052 (Fed.Cir. 1993) ....................20

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ....................9

*Fidelity Construction Co v. U.S.*., 700 F.2d 1379 (Fed. Cir. 1983) ....................8

*Harris v. Secretary*, 126 F.3d 339 (D.C.Cir. 1997) ....................17

*Landmark Land Co. v. U.S.*, 256 F.3d 1365 (Fed.Cir. 2001) ....................17, 19

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002) ....................9

*Texas Health Choice v. Office of Personnel Management*, 400 F.3d 895 (Fed.Cir. 2005) ....................8, 20

### FEDERAL STATUTES AND REGULATIONS

5 U.S.C. §8901 ....................1

5 U.S.C. §8902(i) ....................1, 9, 16

5 U.S.C.§8909(b) ....................7

28 U.S.C. §2514 ....................7

48 C.F.R. §52.215-2 ....................5

48 C.F.R. § 1602.170-13(d) ....................13

48 C.F.R. § 1615.804-70 ....................5

48 C.F.R. § 1616.7001 ....................6

48 C.F.R. §1652.215-2 ....................4

48 C.F.R. § 1652.215-70 ....................5, 6

48 C.F.R. § 1652.216-70(b)(4) ....................7

48 C.F.R. §1652.216-70(b)(6) ....................1, 3, 4, 7, 10, 20

## FEDERAL REGISTER

54 Fed. Reg. 43089 (Oct. 20, 1989)......................................................................11

55 Fed. Reg. 27406, 27410 (July 2, 1990)..............................................................8

59 Fed. Reg. 14761 (March 30, 1994)...................................................................11

61 Fed. Reg. 47569, 4757 (Sept. 10, 1997) ..................................................8, 18

62 Fed. Reg. 27406, 27409 (July 2, 1990)............................................................11

62 Fed. Reg. 47569, 47570 (Sept. 10, 1997) .......................................................11

## I. INTRODUCTION

The Government goes to great lengths to show that the rate negotiation process under the Federal Employees Health Benefits Program (the "Program") is very complex in order to persuade the Court that the action of the Office of Personnel Management ("OPM") in promulgating regulations was reasonable. Despite the complexity of the negotiation process and the rate reconciliation process, and despite the expertise of OPM in matters relating to the Program, the fact remains that the challenged regulation here conflicts with the plain language of the Federal Employees Health Benefits Act, 5 U.S.C. §8901 *et seq*. (the "Act" or "FEHBA"). The Government submits incredulously that the estimated, unreconciled rate proposal made by the contractor months before the start of the contract satisfies the statutory standard only for the final year of contract performance and for no other year. The Act requires that the rates to be paid to carriers under the Program must "reasonably and equitably reflect the cost of the benefits provided." 5 U.S.C. §8902(i). And, OPM has found that rates must be reconciled to reflect the actual rates charged. The regulation at issue here, 48 C.F.R. §1652.216-70(b)(6), (the "Final Year Regulation") violates the statutory provision at 5 U.S.C. §8902(i) because the Final Year Regulation ensures that the rates paid to the carrier in the final year when the contract is not renewed will **not** reflect the cost of the benefits provided.

The Government also argues that it did not breach the contract between OPM and BlueLincs, Contract No. CS 2074 (the "OPM/BlueLincs Contract"). In making that argument, the Government contends that its invalid regulation should be given new life as a contractual term. That argument, however, is without merit because the Government ignores the Order of Precedence clause contained in that contract. The Order of Precedence clause requires OPM to give precedence to the Act where, as here, there is a conflict between the Act and a regulation.

By seeking to enforce the Final Year Regulation at the expense of the Act, OPM breached the OPM/BlueLincs Contract.

Both of the government's central arguments are without merit. The Final Year Regulation directly conflicts with the plain words of the Act and is thus invalid. OPM also breached the OPM/BlueLincs Contract when it failed to give precedence to the Act over the Final Year Regulation.

And, BlueLincs is entitled to the damages of $369,127 that it incurred as a result of OPM's actions.

## II. STATEMENT OF THE CASE

BlueLincs responds to several inaccurate statements made by the Government in those portions of Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment (the "Government Brief") entitled, "Nature of the Case" and "Statement of Facts and Course of Proceedings." *See* RCFC 5.2(a)(2).

### A. The Final Year Regulation does not permit OPM to forego a rate reconciliation in the final year when the contract is not renewed.

The Government asserts that the Final Year Regulation "governs the manner and conditions under which OPM and the various community-rated health plans 'reconcile' community rates from year to year." Government Brief at 5. The Government states that the Final Year Regulation provides that "no reconciliation of rates will take place for that final year of the carrier's participation when the contract is not renewed." Government Brief at 9.

Those characterizations of the Final Year Regulation are inaccurate. The Final Year Regulation states:

> In the event this contract is not renewed, neither the Government nor the Carrier shall be entitled to any adjustment or claim for the difference between the subscription rates prior to rate reconciliation and the actual subscription rates.

48 C.F.R. §1652.216-70(b)(6).

Contrary to the Government's statements, the Final Year Regulation does **not** state that no reconciliation of rates will occur if the contract is not renewed. Rather, the Final Year Regulation states only that there will be no "adjustment or claim" in the final year of the contract if there is a disparity between the subscription rates prior to the rate reconciliation and the actual subscription rates. The Final Year Regulation provides that--in the final year of participation in the Program, unlike every other year of the contract--the carrier will not be entitled to any "adjustment or claim" if the rate reconciliation reveals that the carrier's contract rates are lower than the actual rates that should have been charged.

And, contrary to the Government's characterization, the Final Year Regulation specifically notes that a rate reconciliation will occur in the final year even when the contract is not renewed. The Final Year Regulation clearly contemplates that OPM will conduct a rate reconciliation in that final year to determine the "difference between the subscription rates prior to rate reconciliation and the actual subscription rates." 48 C.F.R. §1652.216-70(b)(6). OPM conducted such a rate reconciliation of BlueLincs' rates for the 2000 contract year and determined that BlueLincs was owed $369,127. Joint Stipulation of Facts ("Stip."), Statement of Fact Not Agreed Upon, ¶47.a; BlueLincs Appendix at 503; and Affidavit of Susan Hamaker, ¶¶4 and 5.

Why does the Government mischaracterize the Final Year Regulation in its brief? Why does the Government say that the Final Year Regulation provides that there will be no rate reconciliation if the contract is not renewed? The Government does those things because the only justifications for the promulgation of the Final Year Regulation were administrative convenience and the forfeiture of contractor claims. And, those justifications would be nullified

if the Government admitted that the Final Year Regulation required OPM to conduct a rate reconciliation in the final year. Indeed, the Government even goes so far as to call the Final Year Regulation, 48 C.F.R. §1652.216-70(b)(6), by the name, the "nonreconciliation regulation" throughout its brief. Clearly, that is a misnomer.

**B. The Final Year Regulation does not relieve carriers like BlueLincs of the requirement to maintain adequate data.**

The Government asserts that the Final Year Regulation "relieves the carrier of the requirement to continue to maintain data sufficient for rate reconciliation once the contract is terminated." Government Brief at 27. The Government is mistaken. The Final Year Regulation does not even mention the carrier's requirement to maintain data. Rather, it states only that neither the Government nor the carrier will be entitled to any adjustment or claim when the contract is not renewed. *See* 48 C.F.R. §1652.216-70(b)(6). The carrier remains bound by the recordkeeping provisions of its contract. *See* 48 C.F.R. §1652.215-2.

The Government argues that the Final Year Regulation also relieves "OPM from the administrative burden of identifying and accessing the appropriate data at a time when the carrier no longer participates in the Program. Government Brief at 27. Of course, the Final Year Regulation does not say that.

**C. BlueLincs' counsel filed comments objecting to the Final Year Regulation prior to its promulgation.**

The Government asserts that "OPM did not receive any comment on the regulations from any of the plaintiffs." Government Brief at 26. That assertion is not entirely accurate.

BlueLincs' counsel--on behalf of an industry trade association (AMCRA) and a number of other clients who participated in the Program--submitted comments and specifically objected to the Final Year Regulation on December 19, 1989. BlueLincs Appendix at 32 and 35. The Government promulgated its defective regulation over the objections of BlueLincs' counsel, the

industry and the OPM Inspector General.

**D. The Final Year Regulation does not place the risk equally on OPM and the carrier in the event of non-renewal.**

The Government would have the court believe that its "non-renewal" policy is reasonable, and that the Final Year Regulation fairly places the burden equally on both the Government and the carriers. The Government repeatedly says: "The parties equally share the risk of inaccurate rates negotiated in the year of nonrenewal." *See* Government Brief at 27, 41-42, and 48. *See also* Kichak Decl. ¶ 26. Indeed the Government says: "There could hardly be any rule more fair in these circumstances." Government Brief at 48.

The Government's assertion is not accurate. While the forfeiture provision may appear to be facially neutral, it is not. The Final Year Regulation does not exist in a void. There are other enforcement mechanisms available to the Government that make the Final Year Regulation one-sided: the Government can pursue money owed to it by the carrier by other means while the carrier forfeits its rights.

Nothing in the clause waives OPM's right to proceed against contractors for a misrepresentation of costs arising under its Certificate of Accurate Cost or Pricing Data, 48 C.F.R. § 1615.804-70. OPM has several important regulatory and contract clauses that enforce this obligation. There is the 48 C.F.R. §52.215-2 Audits and Records – Negotiation clause that requires contractors to keep records. There is 48 C.F.R. § 1652.215-70, Rate Reduction for Defective Cost or Pricing Data clause. That clause states in part:

> RATE REDUCTION FOR DEFECTIVE PRICING OR DEFECTIVE COST OR PRICING DATA (JAN 1998)
>
> (a) If any rate established in connection with this contract was increased because (1) the Carrier submitted, or kept in its files in support of the FEHBP rate, cost or pricing data that were not complete, accurate, or current as certified in the Certificate of Accurate Cost or Pricing Data (FEHBAR 1615.804-70); (2) the Carrier submitted, or kept in its files in support of the FEHBP rate, cost or

> pricing data that were not accurate as represented in the rate proposal documents; (3) the Carrier developed FEHBP rates with a rating methodology and structure inconsistent with that used to develop rates for similarly sized subscriber groups (see FEHBAR 1602.170-13) as certified in the Certificate of Accurate Cost or Pricing Data for Community Rated Carriers; or (4) the Carrier submitted, or kept in its files in support of the FEHBP rate, data or information of any description that were not complete, accurate, and current, then the rate shall be reduced in the amount by which the price was increased because of the defective data or information.

48 C.F.R. § 1652.215-70. *See also* 48 C.F.R. § 1616.7001.

In the Government's own words, "OPM's Office of Insurance Programs requires carriers to certify that their cost or pricing data is accurate, and to maintain records in support of their annual statement of support of their operations." Government Brief at 23 (and regulatory and contract cites therein). As the Government said in its brief, these "rates are subject to cost and price analysis and verification if OPM audits them. 51 Fed.Reg. 43089; 55 Fed.Reg. 27406, 27413-14." Government Brief at 42. This is an entirely different obligation than the rate reconciliation process.

The OPM Office of the Inspector General ("OIG") has the right to pursue cases against carriers who falsely certify that their costs are complete, accurate and current, or who use a methodology inconsistent with the SSSG. *See generally*, www.opm.gov/oig/html/sar18.asp. If this certification is untrue, then carriers may be civilly liable under the False Claims Act ("FCA") for treble damages and under the False Statement Act ("FSA"). OPM's OIG routinely pursues such claims against carriers, and there is simply no reason that it could not do so even in light of the Final Year Regulation. Just because OPM pretends that it does not reconcile the rates does not mean it cannot pursue civil claims for monies.

Indeed, in the comments on the proposed 1989 regulations, the OPM OIG stated that "[t]he clause does not address the potential for a plan to intentionally over charge the program

prior to withdrawing from the program." BlueLincs Appendix at 38. In its final rulemaking prior to promulgation, OPM responded that "OPM continues to have recourse to debt collection agencies and the courts if the situation warrants." BlueLincs Appendix at 42. In other words, the OIG still can pursue all its rights against carriers for mispricing in the courts under the guise of the FCA and FSA. OPM waives no other statutory, regulatory or contract rights, and it continues to brandish the sword of the defective certification over the head of the carrier. With this alternate enforcement scheme, which may be the preferred route of enforcement by OPM in the event of any dispute over the costs, it is no surprise that OPM pretends that it has given up its reconciliation rights. In effect it gives up nothing while making the carrier sign up for a full forfeiture of rights[1].

In sum, the Government can always collect its money for the defective certification of a market price, while the Final Year Regulation imposes a unilateral forfeiture on the carrier. Therefore, the Final Year Regulation is not a reasonable exercise of OPM's rulemaking authority. Rather, it reflects an unreasonable misuse of that power that impermissibly inflicts a forfeiture on contractors. BlueLincs is entitled to its $369,127 plus interest[2].

---

[1] There is no basis in the FEHBA to effect a forfeiture on a carrier such as BlueLincs. In fact, it is hornbook law that, if Congress wanted to work a forfeiture of contractor claims, Congress has the authority to enact such a statute. *See, e.g.,* 28 U.S.C. §2514 (the so-called "Forfeiture Statute"). Instead, Congress mandated reasonable and equitable cost adjustments.

[2] OPM had three choices of how to pay BlueLincs. First, the regulations provide as an "example" that there can be an adjustment in future rates. FEHBAR 1652.216-70(b)(4). But, of course, there is no future plan year here. Or, secondly, OPM can pay carriers out of the contingency reserve. *See* 5 U.S.C.§8909(b). *See also* Government Brief at 24. Or lastly, OPM can simply pay the carrier just as the carrier can pay OPM any sums due. Government Brief at 19. Indeed, in the case of Texas Health, OPM did pay the plan, and then sought to recoup the monies. Stip. at ¶¶28, 30 and 31. Now in the case at bar, OPM can pay BlueLincs out of the indefinite judgment fund.

**E. The accepted rationales for the Final Year Regulation do not include the *post hoc* assertions of the Government.**

The Government offers two rationales from the regulatory history[3] to support OPM's promulgation of the Final Year Regulation: "…it is difficult to get adequate data from plans when they have terminated. Further, in the event a plan goes out of business, there are no rates to reconcile." Government Brief at 28, quoting 55 Fed.Reg. 27406, 27410 (July 2, 1990).

In *Texas Health Choice v. Office of Personnel Management*, 400 F.3d 895, 897 (Fed.Cir. 2005), the Federal Circuit held: "The rationale behind this regulation and the corresponding contract provision is that it is difficult to get adequate data from plans when they have terminated."

Elsewhere in its brief, the Government seeks to provide other rationales that are not part of the regulatory history. For example, the Government submits a Declaration of Nancy H. Kichak that contains alleged justifications for the Final Year Regulation that are **not** in the agency record[4]. These *post hoc* attempts to bolster the Final Year Regulation are not a proper basis for judicial review of an agency's regulation and should be disregarded by the Court. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court").

[3] The Government cites to the regulatory history of the predecessor to the Final Year Regulation that is the subject of this matter. The text of that earlier version of 48 C.F.R. §1652.216-70(b)(6) was altered in 1997-1998 with new language that superseded the earlier version. 61 Fed.Reg. 47569, 4757 (Sept. 10, 1997). The regulatory history for that earlier version is not relevant to the Final Year Regulation in the form at issue in this case—as it existed in 2000. *See Fidelity Construction Co v. U.S..*, 700 F.2d 1379, 1385 (Fed. Cir. 1983) (holding irrelevant legislative history specifically related to previous version of altered text).

[4] Contemporaneously with the filing of its Reply Brief, BlueLincs has filed a Motion to Strike Declaration of Nancy H. Kichak.

## III. ARGUMENT

The standard set out by the Supreme Court in *Chevron* does not save the Government here. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The first inquiry under *Chevron* in deciding whether deference to agency rulemaking is proper is to look to see if the agency rules violate any statutory terms. In fact, the Government ignores the "first question" under *Chevron*, because Congress has spoken to the precise question at issue here. Congress mandated that rates paid to carriers shall reflect the cost of benefits provided. 5 U.S.C. §8902(i). Since the Final Year Regulation violates the Act, it cannot be a permissible construction of the statute. And, no deference to OPM is warranted for a "categorical penalty" that works a forfeiture on contractors contrary to the Act's design. *See, e.g., Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002).

### A. The Final Year Regulation conflicts with and violates the plain words of the statute.

#### 1. There is a clear conflict between the Act and the Final Year Regulation.

There is no dispute that OPM is bound by the Act.

In the Act, Congress has spoken directly and clearly on the issue of what rates will satisfy its requirements. The statute provides: "Rates charged by health benefit plans described by 8903 or 8903a of this title shall reasonably and equitably reflect the cost of the benefits provided." 5 U.S.C. §8902(i). Significantly, this provision of the Act does not carve out any exception for the final year of a carrier's participation in the Program when the contract is not renewed. Rather, the statute requires only that the rates paid to the carrier shall reasonably and equitably reflect the cost of the benefits provided.

Most of the time, the regulations satisfy this statutory requirement. Most of the time, the

regulations require OPM to perform a rate reconciliation to check the estimated rates charged by a carrier and to compare those rates to the carrier's actual subscription rates. Most of the time, the regulations require OPM to make an adjustment or payment to the carrier when the rate reconciliation reveals that the carrier's subscription rates are lower than the carrier's actual subscription rates. Most of the time, OPM has an excellent record for complying with the statutory requirements.

One exception to OPM's excellent record for complying with the statutory requirement to pay rates that "reasonably and equitably reflect the cost of the benefits provided" occurs when the carrier's contract is not renewed. When that happens, OPM falls back on its Final Year regulation which states: "In the event this contract is not renewed, neither the Government nor the Carrier shall be entitled to any adjustment or claim for the difference between the subscription rates prior to rate reconciliation and the actual subscription rates." 48 C.F.R. §1652.216-70(b)(6),

And, when OPM fails to make a payment for the difference between the subscription rates prior to rate reconciliation and the actual subscription rates, then OPM is not paying rates that reasonably and equitably reflect the cost of benefits provided.

2. Initial, estimated rates do not satisfy the requirement of the Act that the rates reflect the cost of benefits provided. Reconciled rates do satisfy the Act's requirement.

OPM argues that the initial, estimated rates are as good as the reconciled rates. OPM is mistaken.

When the "SSSG" rate reconciliation process was first introduced in 1989, OPM stated:

> The definition of "similar sized subscriber groups" has been added to clarify OPM's price negotiation policy. Simply stated, that policy is to obtain the market price, including applicable discounts, accorded to the two subscriber groups arithmetically closest in size to the FEHBP group for the same basic benefit package and same contract year.

54 Fed. Reg. 43089 (Oct. 20, 1989), BlueLincs Appendix at 4.

When the "SSSG" rate reconciliation process was adopted in 1990, OPM stated its purpose:

> OPM's primary objective is to obtain rates which are **reasonable and equitable** for the FEHBP group. In determining the FEHBP plans' rating, OPM will examine only the rating of the plans' SSSGs.

62 Fed. Reg. 27406, 27409 (July 2, 1990) (emphasis added), BlueLincs Appendix at 54. In 1994, OPM reiterated that its "objective is to ensure that the Federal group's rate is equivalent to the SSSG rates…." 59 Fed.Reg. 14761 (March 30, 1994). And, in 1997, OPM stated:

> OPM has a fiduciary responsibility to ensure a reasonable and equitable rate for Federal enrollees as well as for the Government. One of the ways OPM accomplishes this it to require the same discounts for the FEHB program that are enjoyed by the SSSGs; and analyzing cost or pricing data is the only way OPM can achieve accountability.

62 Fed.Reg. 47569, 47570 (Sept. 10, 1997).

OPM also ignores statements that it has made to carriers in describing the rate reconciliation process. For example, in its Reconciliation Instructions, OPM explains why it engages in the rate reconciliation process:

> We began using the concept of "Similarly Sized Subscriber Groups" (SSSGs) in the 1991 rate year. The purpose of the SSSG concept is to ensure that the Federal group receives an **equitable and reasonable** rate.

Supp. App. at 600 (emphasis added). Similarly, OPM has stated: "We developed the SSSG concept to ensure that OPM receives an equitable and reasonable market-based rate." Supp. App. at 537. OPM also informed carriers:

> OPM requires a reconciliation for several reasons. For carriers using TCR or CRC to rate the Federal group, the main reason is that the carrier proposed it's 1997 contract rates seven months before the January 1, 1997 effective date. Therefore, the contract rates are probably based on estimated, rather than actual, community rates. To determine if money is due either OPM or the carrier, you

> must recalculate the rates, basing your calculations on the carrier's actual community rates (usually in the form of a capitation rate) effective for all groups renewing January 1, 1997.
>
> For carriers using ACR to rate the Federal group, the reconciliation will differ very little from the original proposal (see "Special Instructions For Carriers Using ACR" below).
>
> **Note that no matter what rating method the carrier uses for the Federal group, the actual Federal group rates in the reconciliation should be equivalent to the lowest rates the carrier charged an SSSG.**

Supp. App. at 541 (emphasis in original).

OPM thus has acknowledged in its rulemaking and reconciliation instructions that the rate reconciliation process was the only way that it could ensure that the rates charged equitably and reasonably reflect the cost of benefits provided. For OPM to argue here that the reconciliation process does not lead to equitable and reasonable rates is simply disingenuous.

The Government goes too far when it states that "the initial rate is a reasonable and equitable rate that satisfies the statute." Government Brief at 44-45. If that were true, why would OPM ever perform rate reconciliations? And why did OPM make the above statements? If the initial estimated rate satisfied the statute, then OPM would **never** need to compare those rates to the rates charged to SSSGs. By virtue of the fact that OPM conducts rate reconciliations to show the difference between the initial rate and the actual rate, OPM effectively admits that the reconciled rates are required to comply with the statutory directive--indeed, it is the only mechanism to comply with the statutory directive. In the front section of its own brief, the Government acknowledges as much when it notes the carriers were required to submit "an estimated 'market price' to be established **in advance of the plan year**." Government Brief at 15 (emphasis in original). The Government goes on to note that it "provided for **a future reconciliation of estimated to actual market prices as a manner of ensuring rates are**

**consistent with that of similarly sized groups served by the carrier**." *Id*. (emphasis in original).

3. The Final Year Regulation is invalid on its face.

OPM has acknowledged that section 8902(i) requires that the rates must be a reasonable and equitable reflection of the costs of benefits provided when comparing the Federal group to the appropriate SSSG. Government Brief at 44. To achieve that end, OPM has developed an administrative process for rate proposal and reconciliation that it follows for every contract year except the final year. Simply stated, at the time in question, that reconciliation process required carriers to identify the commercial groups closest in size to the Federal group (the "similarly sized subscriber groups" or SSSGs) and to give the Federal group a rate at least as favorable as the lowest rate offered those commercial groups. 48 C.F.R. § 1602.170-13(d).

If, as OPM now insists, the initial rate is a reasonable and equitable rate that satisfies the statute, there would be no reason -- indeed, no rational basis -- for its reconciliation procedures in **any** contract year. To the contrary, a reconciliation is required to ensure that the rates are reasonable and equitable because events occurring after the initial rate filing may affect the correctness of the calculation of the rates. *See, e.g.,* Supp. App. at 544 ("the reconciliation …is a re-submission of the original proposal, in which you revise your original rate estimate") and Supp. App. at 541 ("There are certain other factors that you **should** change between the time of the proposal and the reconciliation."). In this regard, it is notable that, for the Federal group, rates are proposed seven months before the contract year (based on an estimated community rate); reconciliation of those estimates based on the actual contract year events takes place more than a year later. Supp. App. at 532, 541 and 595. For example, corrections in the "headcount" of subscribers to the commercial plans may dictate the use of an SSSG different than that

originally identified by the carrier[5]. Similarly, discrepancies may occur due to the methodology used to calculate rates for commercial plans because they typically complete negotiations and contract on a different (frequently later) cycle than the Federal group, whose contract coincides with the calendar year. *See, e.g.*, Supp. App. at 536 ("The contract renewal date for 1997 SSSGs should be between July 2, 1996 and July 1, 1997"). And, commercial plans that were anticipated to be SSSGs may not renew their plans in the next year. The potential impact of these after-occurring events is obvious and underscores the necessity for reconciliation to ensure that the rates are reasonable in reference to the SSSG.

OPM accurately represents that it is the same rating methods (and not the same rates) that must be used for the Federal group as were used for the SSSGs. However, its conclusion that a "range" of rates may satisfy the statute is disingenuous. Government Brief at 43. The carrier's rates for each group all begin from its "price" (capitation rate) for a certain benefits package. Under traditional community rating, variations in rates among the plans may be attributable to differences in benefits packages (i.e., the Federal group may purchase benefits not included in the commercial plan and adjustments must be made to the standard rate for those benefits). Supp. App. at 540 and 546 ("special benefits loadings"). Similarly, there may be variations from one actuary to the next as to how they approach a particular element of the calculation. Compare Supp. App. 544 and 545 (after describing the "usual" methodology for community-rated carriers, OPM notes that "[s]ome carriers using TCR or CRC derive rates in other ways"). Nonetheless, if the same benefits are being priced and the same methodology is being used, the

---

[5] Contrary to OPM's assertion that a carrier incorrectly identifies an SSSG only in "limited circumstances" (Government Brief at 9), it is one of the most frequently encountered reconciliation or audit issues. *See* OPM reports to Congress at www.opm.gov/oig/html/sar18/asp. For example, in the Office of Inspector General Semiannual Report to Congress for October 1, 2004-March 31, 2005, both of two highlighted audits of community rated plans involved an SSSG that was not correctly identified.

same rate will be developed. Simply stated, OPM's historical position has been that there is a "right" reconciled rate rather than a range of permissible answers, for each Federal group for each contract year. This assumption underlies each OPM audit, in which errors in the calculation of the rates are treated as defective pricing rather than as a "difference of opinion."

The Government states that "even charging a reconciled rate identical to the comparison group rate does not ensure that the rate will reflect the actual cost of benefits provided to, or utilized by, the Federal group." Government Brief at 14. If that is true, then why would OPM ever perform a rate reconciliation?

The Government's argument that the Final Year Regulation is valid is without merit and should be rejected.

**B. <u>As applied to BlueLincs, the Final Year Regulation is invalid.</u>**

The Government acknowledges that none of the rationales offered to support promulgation of the Final Year Regulation apply to BlueLincs. The Government does not dispute that it was not difficult for OPM to obtain data from BlueLincs here because BlueLincs already had provided all of the data to perform the rate reconciliation at the time it notified OPM that it would not renew the OPM/BlueLincs Contract. Government Brief at 46. Similarly, the Government does not dispute that BlueLincs maintained its records for five years after the OPM/BlueLincs Contract was terminated and that BlueLincs did not go out of business. Government Brief at 46-48.

Instead, the Government argues that the Final Year Regulation is valid because it fairly places the burden of risk on OPM and the carriers. As noted in Section II.D., above, that assertion is not correct. The Final Year Regulation does not place the risk equally. The Government has no risk because the Government can pursue overpayments to carriers in the year

of nonrenewal through other means. On the other hand, the carriers have no other avenues to pursue to recover underpayments in the final year. The Final Year Regulation unfairly and inequitably works a forfeiture on the carrier.

### C. <u>OPM breached its Contract with BlueLincs</u>

The Government argues that it did not breach its contract with BlueLincs here. The Government dismisses BlueLincs' argument in a footnote, saying that BlueLincs' argument is merely a restatement of its argument that the regulation is invalid. Government Brief at 59 n.19. The Government is mistaken.

The OPM/BlueLincs contract provides that the provisions of the Act are made a part of the contract as if fully set forth therein. OPM/BlueLincs Contract, Section 1.4(a), BlueLincs Appendix at 245. Thus, the language of 5 U.S.C. §8902(i) is a part of the OPM/BlueLincs Contract. The OPM/BlueLincs Contract also contains the Final Year Regulation. *Id*. Significantly, the OPM/BlueLincs contract contains an "Order of Precedence" clause that states that any inconsistency in the contract shall be resolved by giving precedence to the Act first and the regulations second. OPM/BlueLincs Contract, Section 1.3, BlueLincs Appendix at 245.

As noted in BlueLincs Motion for Summary Judgment, there is a conflict between the Act and the Final Year Regulation. In that event, according to the Order of Precedence clause, the Act should be given precedence over the Final Year Regulation and the contract clause that contains the language form the Final Year Regulation. Thus, under the OPM/BlueLincs Contract, the mandate of the Act controls, and the regulatory provision to the contrary does not apply. To give precedence to the Act over the Final Year Regulation required OPM to pay to BlueLincs the amount it determined to be the difference between the subscription rates charged by BlueLincs prior to rate reconciliation and the actual subscription rates—i.e., $369,127.

When OPM failed to pay BlueLincs that amount, OPM breached the contract.

**D. BlueLincs did not waive its right to object to the Final Year Regulation or the clause in the OPM/BlueLincs Contract.**

The Government argues that BlueLincs waived its right to assert that the Final Year Regulation is invalid[6]. The Government is not correct.

The Government argues that BlueLincs waived its right to object to the Final Year Regulation because BlueLincs did not "challenge" the regulation at any time prior to substantial completion of the contract[7]. Government Brief at 52.

In fact, BlueLincs challenged the application of the Final Year Regulation shortly after it was advised that OPM was not going to pay the $369,127 to BlueLincs. *See* BlueLincs Appendix at 503-505. BlueLincs had no standing to challenge the Final Year Regulation until that denial and the creation of a "ripe" dispute under the Contract Disputes Act. *See Landmark Land Co. v. U.S.*, 256 F.3d 1365, 1380 (Fed.Cir. 2001).

This argument is not well-taken and should be rejected.

---

[6] Indeed, the Government makes a series of waiver, laches and statute of limitations claims for the first time, years after the filing of BlueLincs' case. Yet the Government never even filed an answer to BlueLincs' Complaint in this matter to raise such affirmative defenses. *See* RCFC 8(c). The failure to plead any affirmative defenses should bar their assertion in the context of a summary judgment motion. *See Harris v. Secretary*, 126 F.3d 339, 343 (D.C.Cir. 1997).

[7] The Government argues: "Plaintiffs must not now be allowed to select which contract clauses apply to it, accepting the underlying regulation when it does not cause financial disadvantage to the carrier, and complaining when it fails to result in financial advantage to it." Government Brief at 54. This argument is curious, because it is the Government – and not BlueLincs – that is selecting which contract clauses apply. For instance, the Government did not apply the Order of Precedence Clause. Further, BlueLincs never "accepted" the Final Year Regulation because that regulation only was triggered when OPM told BlueLincs that it would not be paid the $369,127 reconciliation amount after BlueLincs gave notice that it would not renew the OPM/BlueLincs Contract. The Government also is wrong about BlueLincs' failure to object to the Final Year Regulation at the time of its promulgation. Although that is not a prerequisite to a valid claim in this court, BlueLincs' counsel did object to the Final Year Regulation. *See* Section II.B, above. The Government asserts that reformation is not warranted and that the Court should just enforce the agreement as written. BlueLincs submits that the contract should be reformed to strike the offending clause. Or, in the alternative, the Court can enforce the agreement as written, but subordinate the offending clause to the plain language of the Act, thus giving effect to the Order of Precedence clause.

**E. <u>The doctrine of laches does not bar BlueLincs' claims here.</u>**

The Government argues that BlueLincs' claims should be dismissed based on the doctrine of laches. The Government argues that there was an unreasonable delay of more than ten years before BlueLincs filed its claim. This argument is without merit.

In the Contract Year 2000 BlueLincs had some telephone calls and sent an October 31, 2000 letter to the Government on the payment of monies BlueLincs thought were due . BlueLincs Appendix at 503. BlueLincs filed its claim on July 20, 2001. Stip., ¶24. By its letter dated November 15, 2000, OPM informed BlueLincs that the rate reconciliation balance would not be paid to BlueLincs. Stip., ¶23. Therefore, BlueLincs filed its claim about eight months after the claim arose. The Government cites "fading memories" to support its laches defense. Government Brief at 56. If so, the Government apparently has a short-term memory problem. The Government was not prejudiced, nor has the Government asserted any claim of prejudice in any manner. BlueLincs is not aware of any cases barring claims based on laches in such circumstances[8].

The Government tries to argue that BlueLincs' claim arose in 1990 when the Final Year Regulation was promulgated. That assertion is specious. The 1990 version of the Final Year Regulation is not the exclusive subject of this action. Rather, the Final Year Regulation that is the subject of this action was actually promulgated in 1997 and became effective in 1998. 61

[8] All of the cases cited by the Government are inapposite. Those cases involved a government error that the contracting officer could have corrected if the claims had been raised in a timely fashion. Unlike the cases cited by the Government, there was no error in the RFP or selection of the wrong contract clause. There was nothing BlueLincs could have done to prevent the dispute. Indeed, by contrast, here, BlueLincs tried to avoid the dispute by submitting a letter to OPM on October 31, 2000 seeking payment of the rate reconciliation funds to offset another claim that the Government had against BlueLincs. BlueLincs Appendix at 503. BlueLincs sent that letter less than a month after BlueLincs was advised by OPM's Sherry Simon of the rate reconciliation balance. *Id*. *See also* Affidavit of Susan Hamaker, ¶¶4 and 5. BlueLincs' counsel also had conversations with Ms. Simon in the interim. BlueLincs Appendix at 504. And, BlueLincs filed its certified claim on or about July 20, 2001. Stip., ¶24.

Fed.Reg. 47569, 4757 (Sept. 10, 1997). These 1997 regulations changed the language of the 1990 version and superseded that earlier version. And, even if the 1990 Final Year Regulation was the key regulation that was at issue here, which it is not, BlueLincs did not have standing to challenge the Final Year Regulation at that time because there was no actual case or controversy existing at that time. *See Landmark Land Co. v. U.S.*, *supra* at 1380. The case or controversy between BlueLincs and the Government only arose in November 2000 when OPM told BlueLincs that it would not be paid the reconciliation balance based on the Final Year Regulation. And, BlueLincs submitted its certified claim only eight months later.

The Government's laches argument should be rejected.

**F. <u>The statute of limitations does not bar BlueLincs' claim here.</u>**

The Government notes in a footnote that it is likely "that any claim that the carriers might have had to challenge the regulation is now time-barred by the six year statute of limitations." Government Brief at 45 n.11. The Government is wrong again.

The regulation that is challenged here was **not** promulgated in 1989 or 1990. In fact, the Government notes that the original regulation was revised in 1997-1998. Government Brief at 7-8. And, BlueLincs' Complaint was filed in this matter on September 7, 2001—less than four years later. Therefore, even if BlueLincs had to file its complaint to challenge the regulation here within six years of its promulgation, then BlueLincs met that deadline.

The Government, however, also notes in its brief that "[w]e do not argue any CDA statute of limitations. Each of the three plaintiffs submitted a CDA claim to the contracting officer in a timely manner." Government Brief at 55 n. 15. Therefore, it is unclear to which six

year limitations period the Government is referring.[9] That is particularly curious in light of the holding of the Federal Circuit that "'[t]he CDA clearly and comprehensively defines the procedures for all contractual disputes between the United States and private contractors.'" *Texas Health Choice v. Office of Personnel Management*, 400 F.3d 895, 900 (Fed.Cir. 2005) (quoting *Cecile Industries, Inc. v. Cheney*, 995 F.2d 1052, 1055 (Fed.Cir. 1993)).

The Government's statute of limitations defense is emblematic of its kitchen sink approach to this litigation. It should be rejected.

### G. <u>It is unfair that OPM should reap a windfall at BlueLincs' expense.</u>

The Government asserts that "fairness" requires this Court to enforce the OPM/BlueLincs Contract as written even if it is invalid and contrary to the Act.

The Government ignores the plain language of the OPM/BlueLincs Contract that requires that the Act shall take precedence over any conflicting regulation. The contract clause is subordinate to the plain language of FEHBA. Thus, even if this Court were to enforce the OPM/BlueLincs Contract as written, as the Government suggests, then this Court would not give effect to the Final Year Regulation. So, for fairness' sake, the Government really is asking the Court to read the Order of Precedence clause out of the OPM/BlueLincs Contract. Only that could permit the Government to hold onto the funds that its reconciliation process in 2000 determined were owed to BlueLincs for benefits BlueLincs provided to federal enrollees.

Notwithstanding the Government's incorrect reading of the OPM/BlueLincs Contract, the Government has its fairness argument exactly backward. There is no unfairness to the Government—only to BlueLincs. The Government is the party seeking to reap an unjust

---

[9] Plaintiff assumes the Government refers to the general statute of limitations that applies to government contract claims. Nevertheless, neither BlueLincs nor this Court should be left to guess which statute of limitations is allegedly at issue. This is compounded by the fact that the Government never raised the statute of limitations as an affirmative defense in any Answer.

enrichment. The Government is the party seeking to hold onto an improper windfall. The Government seeks to keep $369,127 that it has acknowledged is due BlueLincs for the benefits it provided to plan members in 2000.

Contrary to the assertions of the Government, basic fairness dictates that BlueLincs be paid the sums that OPM determined BlueLincs was owed for the benefits it provided in 2000.

## IV. CONCLUSION

The Government's arguments represent a disingenuous attempt to complicate this dispute in order to avoid the central issue in this case: whether the Final Year Regulation conflicts with the Act.

The answer is clear. The Final Year Regulation, 48 C.F.R. § 1652.216-70(b)(6), irreconcilably conflicts with the Federal Employees Health Benefits Act, both facially and as applied to BlueLincs. The Final Year Regulation therefore is invalid and should be stricken down. The OPM/BlueLincs Contract should be reformed. In addition, or in the alternative, OPM breached the OPM/BlueLincs Contract by improperly giving precedence to the Final Year Regulation over the provisions of the Federal Health Employees Benefits Act. Therefore, BlueLincs, for the above stated reasons and for all of the reasons set forth in its Motion for Summary Judgment, respectfully requests that this Court grant its motion for summary judgment and deny the Government's motion for summary judgment.

Respectfully submitted,

Dated: March 31, 2006

s/ Daniel B. Abrahams
Daniel B. Abrahams
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Suite 700
Washington D.C. 20037
PHONE: (202) 861-0900
FAX: (202) 296-2882
dabrahams@ebglaw.com

Of Counsel:

Constance A. Wilkinson
Michael D. Maloney
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Suite 700
Washington D.C. 20037
PHONE: (202) 861-0900
FAX: (202) 296-2882

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 31st day of March, 2006, I caused to be electronically served a copy of the Plaintiff GHS Health Maintenance Organization, Inc.'s Reply Brief on the following:

Michael S. Nadel
McDermott Will & Emery LLP
600 Thirteenth Street, N.W.
Washington, D.C. 20005
mnadel@mwe.com

Jane W. Vanneman, Esq.
Senior Trial Counsel
Commercial Litigation Branch
Department of Justice
ATTN: Classification Unit, 8th Floor
1100 L Street, NW
Washington, DC 20530
Jane.vanneman@usdoj.gov

s/ Daniel B. Abrahams