# Exhibit AA

# FEHB Program Carrier Letter
## Community Rated Carriers

U.S. Office of Personnel Management
Office of Insurance Programs

**Letter No. 1998-016-A** **Date:** April 10, 1998

Fee-for-service [ ] Experience-rated HMO [ ] Community-rated [14]

**SUBJECT:** 1999 RATE INSTRUCTIONS - Community Rated Carriers

Enclosed are the documents which, when completed by the carrier and returned to OPM, will constitute the carrier's 1999 rate proposal. You must submit your rate proposal and the completed attachments by June 1, 1998. Please note that the June 1 deadline is required by regulation and extensions cannot be granted.

The document entitled "OPM Community Rating Guidelines - 1999" gives pertinent definitions and an overall view of our community rating policy for 1999.

A small carrier (see guidelines for definition) has three options:

1) It may submit the same detailed documentation we require for large carriers.

2) If its 1998 income from the Federal group will be $500,000 or more, the carrier may submit only Attachments I, IA, IIB, and IIC. Such a carrier **must also complete Attachments II and IIA and keep them on file and available for OPM review.**

3) If its 1998 income from the Federal group will be less than $500,000, the carrier may submit only Attachments I, IIB, and IIC. Such a carrier need not complete or retain Attachments II or IIA.

Large carriers must complete and submit to OPM Attachments II, IIA, IIB and IIC.

Please send one copy of the rate submission to each of the following addresses:

Mr. Frank D. Titus
Assistant Director for Insurance Programs
Office of Personnel Management
P.O. Box 436
Washington, DC 20044

Ms. Nancy H. Kichak
Director, Office of Actuaries
Office of Personnel Management
1900 E Street, NW., Room 4307
Washington, DC 20415

Proposals submitted by overnight delivery to Mr. Titus should be addressed as follows:

Mr. Frank D. Titus
Assistant Director for Insurance Programs
Office of Personnel Management
1900 E Street, NW., Room 3424
Washington, DC 20415

Please remember that your first quarter enrollment report, Table 1, is due on April 15 at the following address:

Office of Personnel Management
Office of Insurance Programs
(Name and Division of your Contract Specialist)
P.O. Box 436
Washington, DC 20044

Please direct your questions about the 1999 rate submission to Phil Haverstick, Sherry Simon, or Jim Quayle at (202) 606-0722.

Sincerely,

(Signed)
Frank D. Titus
Assistant Director
for Insurance Programs

Enclosure

## Table of Contents

**OPM Community Rating Guidelines - 1999**
This discusses OPM's rating policy for the 1999 rate year.

**Attachment I**
This is the 1999 rate proposal/questionnaire for small carriers.

**Instructions for Attachment I**
This gives line-by-line instructions to small carriers for completing Attachment I.

**Attachment IA**
This is the Certificate of Accurate Pricing For Small Community Rated Carriers. It is for use only by small carriers whose 1998 income from the Federal group will be $500,000 or more. This certifies that the information in the reconciliation documents (Attachments III, IIIA, IIIB, kept on file at the carrier) is accurate and that OPM can rely on it as a basis for determining the Federal group's 1998 rates. A contracting official of your carrier must complete and sign this document. **Note that this document pertains to the carrier's 1998 rates.**

**Attachment II**
The rate proposal sheet. Large carriers and small carriers whose 1998 income from the Federal group will be $500,000 or more must complete this form. Only large carriers must submit it to OPM.

**Instructions for Attachment II**
This gives line-by-line instructions (with examples and discussion) for completing Attachment II.

**Attachment IIA**
This is the Community Rate Questionnaire. Large carriers and small carriers whose 1998 income from the Federal group will be $500,000 or more must complete it, but only large carriers must submit it to OPM. If you re-type this questionnaire, please be sure that the questions and answers are on only one side of each sheet.

**Attachment IIB**
This requests the names, telephone and fax numbers of two persons we can contact about your rate proposal. All carriers must submit this form to OPM.

**Attachment IIC**
This requests utilization data (based on the carrier's total enrollment) for prescription drug, hospital, and office visit benefits. This report replaces a report previously required by our Office of Financial Control and Management. Therefore, it should not result in an increased reporting burden.

# OPM Community Rating Guidelines - 1999

## General Policy For The 1999 Rate Year

We divide carriers into two groups, "large" and "small." For 1999, we define small carriers as those having less than 1500 FEHBP contracts at the time of the rate proposal. We define large carriers as those having 1500 or more contracts at the time of the rate proposal.

The amount and nature of the back-up documentation we require for small carrier rate proposals differs from the large carrier requirements. Until 1996, small carriers had the option of submitting the SF 1412 (Claim for Exemption from Submission of Certified Cost Pricing Data). We have discontinued the use of the SF 1412, because of the Federal Acquisitions Streamlining Act of 1994.

For the 1999 rate proposal, a small carrier has three options:

1) It may submit the same detailed documentation we require for large carriers.

2) If its 1998 income from the Federal group will be $500,000 or more, the carrier may submit only Attachments I, IA, IIB, and IIC. Such a carrier must also complete Attachments II and IIA and keep them on file and available for OPM review.

3) If its 1998 income from the Federal group will be less than $500,000 the carrier may submit only Attachments I, IIB, and IIC. Such a carrier need not complete or retain Attachments II and IIA.

In what follows, "small carrier" refers to a carrier with under 1500 FEHBP contracts choosing not to submit the detailed documentation we require for large carriers (i.e., a small carrier is one that chooses option 2 or 3 above).

All carriers must derive their Federal group rates according to OPM community-rating principles. Small carriers whose 1998

Federal group income will be $500,000 or more must complete Attachment II (Proposed Biweekly Net-To-Carrier Rates For the 1999 Rate Year) and Attachment IIA (Community Rate Questionnaire) but should not send these documents to OPM. Such carriers must keep these documents on file, in accordance with the records retention clause of the contract. The OPM auditors will examine the documents during carrier audits, and the OPM Office of Actuaries may also periodically review the documents.

Small carriers whose 1998 Federal group income will be less than $500,000 are not required to complete or retain Attachments II and IIA.

Since small carriers will not submit detailed documentation, the Office of Actuaries will evaluate the proposed rates by using its reasonableness test. Rates failing this test will be further reviewed. For small carriers whose 1998 Federal group income will be $500,000 or more, the Office of Actuaries may request detailed documentation.

**Special Audits**

OPM's Office of the Inspector General will perform special audits of carrier's 1998 rate reconciliations on a selected basis beginning in May, 1998. Although these audits will focus on the 1998 rate reconciliation, the audit staff may need to analyze rate information for the Federal group and other groups for previous years. Carriers should keep all documentation used to develop the 1998 rate reconciliation readily available for review by the audit staff.

**New Rating Areas**

If you propose a rate for a new area (or a new division of the current area), please submit a letter explaining why you have decided to add this area, and how it relates to your previous service area (for example, is the new area a portion of an existing area that has been split into two or more sections?). Also explain how your current enrollment will be affected by the addition of this new area.

**Similarly Sized Subscriber Groups (SSSGs)**

We began using the concept of "Similarly Sized Subscriber Groups" (SSSGs) in the 1991 rate year. The purpose of the SSSG concept is to ensure that the Federal group receives an equitable and reasonable rate.

*Regulatory Definition*

48CFR 1602.170-13 defines SSSGs as follows:

(a) Similarly sized subscriber groups (SSSGs) are a comprehensive medical plan carrier's two employer groups that:

(1) As of the date specified by OPM in the rate instructions, have a subscriber enrollment closest to the FEHBP subscriber enrollment; and

(2) Use any rating method other than retrospective experience rating; and

(3) Meet the criteria specified in the rate instructions issued by OPM.

(b) Any group with which an FEHB carrier enters into an agreement to provide health care services is a potential SSSG (including separate lines of business, government entities,groups that have multi-year contracts, and groups having point of service products).

The regulation points out in paragraph (c) that there are certain exceptions to the rule in paragraph (b). That is, the following groups **must** be excluded from SSSG consideration:

(1) Groups the carrier rates by the method of retrospective experience rating.

(2) Groups consisting of the carrier's own employees.

(3) Medicaid groups, Medicare groups, and groups that have only a stand alone benefit (such as dental only).

**OPM Community Rating Guidelines - 1999**

(4) A purchasing alliance whose rate-setting is mandated by the State or local government.

Finally, the regulation states the following pertaining to how OPM will determine the Federal group's rate in relation to the SSSG's rates:

(d) OPM shall determine the FEHBP rate by selecting the lower of the two rates derived by using the two rating methods consistent with those used to derive the SSSG rates.

*Enrollment and Contract Renewal Dates*

For the 1999 rate year the guidelines for are as follows:

1) All group enrollments (the Federal group and the SSSG enrollments) should be the latest 1999 enrollment available to the carrier (but no later than March 31, 1999).

2) The contract renewal date for 1999 SSSGs should be between July 2, 1998 and July 1, 1999. **Note: You should interpret "renewal date" to mean the date on which a rate change (if any) is effective for the SSSG.**

*Policy on Multiple Rating Areas, and Different Regions Under the Same Rate Code*

Since the 1996 rate year, our policy with regard to multiple rating areas has been as follows (quoted from the 1998 reconciliation instructions):

> "Carriers having multiple rating areas covered under the same contract with OPM must choose two SSSGs for every federal group under the contract. **The two SSSGs need not however, be located in the same region as the federal group.** The carrier must consider all appropriate groups with which it does business (regardless of the region the group is in) when selecting the SSSGs for the Federal group in a particular region. **This policy does not apply in cases where the multiple rating areas are in different states if the carrier can demonstrate that the rates in the different**

**states are totally independent."**

Beginning with the 1999 rate year, we are amending this policy. We now require that both SSSGs be chosen only from groups that have enrollees in the federal group's region.

Normally, a carrier must choose two SSSGs for every federal group having a unique rate code. It is possible that a carrier could have several different geographical regions of federal enrollees under the same rate code. It is even possible that these regions could be in different states.

Our SSSG policy with regard to federal groups in different regions under the same rate code is as follows:

a) those federal groups in the same state or in the same metropolitan area must be combined and the carrier must choose two SSSGs for the combined federal group.

b) those federal groups in different states (but not in the same metropolitan area) must be combined **in each state**, and the carrier must choose two SSSGs for the combined federal groups in each state.

The following examples illustrate the above policies.

**Example 1**

A carrier operates only in the state of Texas. It serves federal enrollees in three distinct geographical areas, Dallas, Houston and San Antonio. Each region has it's own rate code.

The carrier must choose two SSSGs for each region. Those for each region would come from groups the carrier does business with having enrollees in that region.

**Example 2**

Same situation as in Example 1 except that one rate code applies to all three regions, meaning that the same rate applies for all federal enrollees throughout the three regions.

In this case, the carrier must combine the enrollment for all

three regions, and choose two SSSGs for the combined group.

**Example 3**

A carrier operates in two states, Texas and Arizona. In Texas it serves federal enrollees in Dallas, Houston, and San Antonio. In Arizona, it serves federal enrollees in Phoenix, Tucson, and Tombstone. One rate code applies to all six regions.

In this case two SSSGs are required for the combined Dallas. Houston and San Antonio regions. Two SSSGs are also required for the combined Phoenix, Tucson and Tombstone regions.

**Note: The point of this example is to illustrate that only regions within a state should be combined.**

The same principle apply if the carrier operates in several states.

**Example 4**

A carrier operates in two states, and serves a metropolitan area that is in both states. The rate code is the same for all enrollees in the metropolitan area.

In this case, two SSSGs are required for the combined metropolitan region enrollment.

**Note: The point of this example is to illustrate the exceptional case where regions in different states should be combined for SSSG purposes.**

**Example 5**

The size of the federal group in a region is 1700, and the carrier concludes that it must choose two SSSGs for this group. The carrier contracts with the statewide XYZ corporation, which has a statewide enrollment of 1500 with the carrier, with 100 of the enrollees living in the same region where the federal group is located.

The XYZ corporation would be a candidate for an SSSG since it has 100 enrollees in the federal group's region. The enrollment the carrier should use in comparing the size of this group to the

federal group is the statewide enrollment of 1500.

**Note: The point of this example is to illustrate that a group having only part of it's enrollment in the federal group's region can be an SSSG. It is assumed that the rates for all 1500 enrollees of the SSSG are the same.**

*Consistency Of Rating Methods*

We normally expect the carrier to use the same rating method for the Federal group as it uses for the SSSGs. There are situations in which we accept different rating methods. **If, however, the carrier rates an SSSG using a method not in accord with the carrier-established policies, the Federal group is entitled to any rate reduction produced by applying the SSSG rating method to the Federal group.**

*Examination Of Non-SSSG Groups*

At times, OPM may examine the rates of non-SSSG groups. The purpose of such analysis is to verify the equivalence of the Federal group and SSSG rates. For example, if an SSSG had a special benefit (e.g., dental benefit) not included in the Federal group benefit package, OPM would compare what the carrier charged the SSSG with what it charged other groups for the benefit. The purpose would be to verify that the SSSG received no discount.

Carriers need not be concerned that an OPM review of a non-SSSG commercial group makes it a potential SSSG.

*Miscellaneous Remarks*

We do not request SSSG information now. Rather, we will ask for it in 1999 when we send you the rate reconciliation instructions.

The Federal group's rates must be equivalent to the lower of the two SSSG rates, reflecting any market advantage given to an SSSG.

Since your carrier is community rated, the rates for most groups not using Adjusted Community Rating (ACR) are probably based on an underlying "community rate." Carriers using ACR normally base a group's rates on the underlying experience for that group. Regardless of which community rating method the carrier uses

(TCR,CRC or ACR), OPM now focuses on the rating method used for the two SSSGs to determine if a carrier has appropriately derived the Federal group rates.

**State Taxes**

5 U.S.C. 8909(f)(1) prohibits the imposition of taxes, fees, or other monetary payment, directly or indirectly, on FEHBP premiums by any State, the District of Columbia, or the Commonwealth of Puerto Rico, or by any political subdivision or other governmental authority of those entities. If your Attachment II, Line 1 rates include an amount to recover such monies from the FEHBP, you should make an adjustment for this amount in the form of a negative special benefit loading in the Special Benefit Loadings section of Attachment II.

**Special Loading For Enrollment Discrepancies**

Beginning last year (the 1998 rate year), as the result of negotiations between OPM and representatives of community-rated carriers, we amended the Standard Contract for Federal Employees Health Benefits. The contract now provides for a special premium loading of 1% to account for unresolved enrollment discrepancies.

You should place this loading on Line 4e of Attachment II.

**Community Rating Policy**

We accept three standard methods of community rating:

1) Traditional Community Rating (TCR)

2) Community Rating By Class (CRC)

3) Adjusted Community Rating (ACR)

We expect carriers using TCR or CRC for 1999 to develop rates from a community-based revenue requirement (normally in the form of a capitation rate) which is documented and verifiable. Once you establish the capitation rate, you may convert it to self and family rates using standard procedures.

A carrier using ACR may use a method based on utilization data or

it may use a prospective method based on actual Federal claims data.

We ask you in the Community Rate Questionnaire to provide the criteria you use to determine your rating method for the Federal group.

***CRC Rating***

A carrier using CRC for the Federal group must provide a standard presentation of its rating method. The document "Instructions For Attachment II" includes details of this standard format and an example illustrating it. If a carrier using CRC cannot comply with OPM's standard format, it must submit its rate manual and/or other official documents that demonstrate the actuarial soundness of the carrier's CRC method.

We have always accepted age and sex as legitimate factors for CRC. You must support any other proposed factor with carrier documentation showing that the factor predicts utilization. We explain our policy for industry factors in the document entitled "Instructions for Attachment II".

**A large carrier using CRC must furnish a table showing the age-sex distribution on which it based the Federal group's CRC adjustment factor.** You must clearly show how you used this table to derive the adjustment factor.

Carriers using TCR or CRC and demographic factors (such as family size) based on group-specific data must also use group-specific data for the SSSGs. You must base all demographic factors on <u>actual</u> in-force group data.

### *ACR Rating*

The following rules apply for carriers using ACR for the Federal group:

1) The carrier must have a documented ACR method established and implemented by 1999.

2) The carrier must use ACR for at least one of its SSSGs.

3) The carrier may use a prospective method based on actual Federal claims data, or a method based on utilization data. **In either case, the carrier must keep on file all data necessary to justify the ACR rate (i.e., claims, utilization etc.)**

If you use ACR, you must completely and clearly explain your method. We may ask for additional documentation from carriers using ACR, including the carrier's rating manual.