IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| GHS HEALTH MAINTENANCE ORGANIZATION, INC., d/b/a BLUELINCS HMO, Plaintiff, | ) | |
| TEXAS HEALTH CHOICE, L.C., Plaintiff, | ) | |
| SCOTT & WHITE HEALTH PLAN Plaintiff, | ) | |
| v. | ) | Nos. 01-517C, 05-371C, 05-963C (Judge Horn) |
| UNITED STATES, Defendant. | ) | |

DEFENDANT'S MOTION FOR LEAVE
TO FILE APPENDIX PAGES 180-209, GHS 7A

Pursuant to this Court's request, defendant respectfully requests leave to file Appendix page 180-209, in an electronic file GHS 7A.

When we filed our Appendix, on October 24, 2005, apparently pages 180-209 were missing from the ECF file.[1] Recently, the Court requested that we file these pages. We file these pages as GHS 7A, as they follow the pages at the end of ECF file GHS7, and would precede the

[1] In October 2005, we served upon counsel for the three plaintiffs a hard copy of the Appendix (in addition to the ECF file). The hard copy contained pages 180-209 that were missing from the ECF files.

pages contained in ECF file GHS 8.

We apologize for the omission in our earlier filing.

For the foregoing reasons, defendant respectfully requests that the Court permit us to file pages 180-209 in the ECF file, as part of the original appendix filed in October 2005.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/s David M. Cohen
DAVID M. COHEN
Director

SUSAN WHITMAN, Esq.
JILL GERSTENFIELD, Esq.
U.S. Office of Personnel Management
Washington D.C.

s/s Jane W. Vanneman
JANE W. VANNEMAN
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., NW
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Phone: (202) 307-1011
Fax: (202) 514-8624

August 2, 2006

.

CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of August, 2005, a copy of the foregoing "DEFENDANT'S MOTION FOR LEAVE TO FILE APPENDIX PAGES 180-209, GHS 7A" and GHS 7A was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/s Jane W. Vanneman

and heart disease; the need for anesthesia, by itself, is not such a condition.

Acute inpatient detoxification

Hospitalization for medical treatment of substance abuse is limited to emergency care, diagnosis, treatment of medical conditions, and medical management of withdrawal symptoms (acute detoxification) if the Plan doctor determines that outpatient management is not medically appropriate. See page xx for nonmedical substance abuse benefits.

What is not covered

- Personal comfort items, such as telephone and television
- Blood and blood derivatives not replaced by the member
- Custodial care, rest cures, domiciliary or convalescent care

CARE MUST BE RECEIVED FROM OR ARRANGED BY PLAN DOCTORS

**Emergency Benefits**

What is a medical emergency?
A medical emergency is the sudden and unexpected onset of a condition or an injury you believe endangers your life or could result in serious injury or disability, and requires immediate medical or surgical care. Some problems are emergencies because, if not treated promptly, they might become more serious; examples include deep cuts and broken bones. Others are emergencies because they are potentially life-threatening, such as heart attacks, strokes, poisonings, gunshot wounds or sudden inability to breathe. There are many other acute conditions that the Plan may determine are medical emergencies what they all have in common is the need for quick action.

Emergencies within the service area
If you are in an emergency situation, please call your primary care doctor. In extreme emergencies, if you are unable to contact your doctor, contact the local emergency system (e.g., the 911 telephone system) or go to the nearest hospital emergency room. Be sure to tell the emergency room personnel that you are a Plan member so they can notify the Plan. You or a family member must notify the Plan within 48 hours. It is your responsibility to ensure that the Plan has been timely notified.

If you need to be hospitalized, the Plan must be notified within 48 hours or on the first working day following your admission, unless it was not reasonably possible to notify the Plan within that time. If you are hospitalized in non-Plan facilities and Plan doctors believe care can be better provided in a Plan hospital, you will be transferred when medically feasible with any ambulance charges covered in full.

Benefits are available for care from non-Plan providers in a medical emergency only if delay in reaching a Plan provider would result in death, disability or significant jeopardy to your condition.

To be covered by this Plan, any follow-up care recommended by non-Plan providers must be approved by the Plan or provided by Plan providers.

Plan pays...
Reasonable charges for emergency services to the extent the services would have been covered if received from Plan providers.

***You pay...***
$50 per hospital emergency room visit and $25 per visit to a participating minor emergency or urgent care center for emergency services that are covered benefits of this Plan. If the emergency results in admission to a hospital, the emergency care copay is waived.

Emergencies outside the service area
Benefits are available for any medically necessary health service that

is immediately required because of injury or unforeseen illness.

If you need to be hospitalized, the Plan must be notified within 48 hours or on the first working day following your admission, unless it was not reasonably possible to notify the Plan within that time. If a Plan doctor believes care can be better provided in a Plan hospital, you will be transferred when medically feasible with any ambulance charges covered in full.

Plan pays...
Reasonable charges for emergency care services to the extent the services would have been covered if received from Plan providers.

***You pay...***
$50 per hospital emergency room visit for emergency services that are covered benefits of this Plan. If the emergency results in admission to a hospital, the emergency care copay is waived.

What is covered

- Emergency care at a doctor's office or an urgent care center
- Emergency care as an outpatient or inpatient at a hospital, including doctors' services
- Ambulance service approved by the Plan

What is not covered

- Elective care or non-emergency care
- Emergency care provided outside the service area if the need for care could have been foreseen before leaving the service area
- Medical and hospital costs resulting from a normal full-term delivery of a baby outside the service area

Filing claims
With your authorization, the Plan will pay benefits directly to the providers of your emergency care upon receipt of their claims. Physician claims should be submitted on the HCFA 1500 claim form. If you are required to pay for the services, submit itemized bills and your receipts to the Plan along with an explanation of the services and the identification information from your ID card.

Payment will be sent to you (or the provider if you did not pay the bill), unless the claim is denied. If it is denied, you will receive notice of the decision, including the reasons for the denial and the provisions of the contract on which denial was based. If you disagree with the Plan's decision, you may request reconsideration in accordance with the disputed claims procedure described on page *xx*.

**Mental Conditions/Substance Abuse Benefits**

Mental conditions

What is covered
To the extent shown below, the Plan provides the following services necessary for the diagnosis and treatment of acute psychiatric conditions, including the treatment of mental illness or disorders:

- Diagnostic evaluation
- Psychological testing
- Psychiatric treatment (including individual and group therapy)
- Hospitalization (including inpatient professional services)

Outpatient care
Up to 40 outpatient visits to Plan doctors, consultants or other psychiatric personnel each calendar year; **you pay** a $20 copay for each covered visit all charges thereafter.

Inpatient care
Up to 30 days of hospitalization each calendar year; **you pay** nothing for first 30 days all charges thereafter.

What is not covered

- Care for psychiatric conditions that in the professional judgment of Plan doctors are not subject to significant improvement through relatively short-term treatment
- *Psychiatric evaluation or therapy on court order or as a condition of parole or probation, unless determined by a Plan doctor to be necessary and appropriate*
- Psychological testing that is not medically necessary to determine the appropriate treatment of a short-term psychiatric condition

*The medical management of mental conditions will be covered under this Plan's Medical and Surgical Benefits provisions. Related drug costs will be covered under this Plan's Prescription Drug Benefits, and any costs for psychological testing or psychotherapy will be covered under this Plan's Mental Conditions Benefits.*

Substance abuse

What is covered
This Plan provides medical and hospital services such as acute detoxification services for the medical non-psychiatric aspects of substance abuse, including alcoholism and drug addiction, the same as for any other illness or condition. Services for the psychiatric aspects are provided in conjunction with the mental conditions benefit shown above. Outpatient visits to Plan mental conditions providers for follow-up care and counseling are covered, as well as inpatient services

necessary for diagnosis and treatment. The mental conditions visit/day limitations and copays apply.

What is not covered

- Treatment which is not authorized by a Plan doctor

CARE MUST BE RECEIVED FROM OR ARRANGED BY PLAN DOCTORS

**Prescription Drug Benefits**

What is covered
Prescription drugs prescribed by a Plan or referral doctor and obtained at a Plan pharmacy will be dispensed for up to a 30-day supply; **you pay** a $5 copay per prescription unit or refill for generic drugs, and a $10 copay per prescription unit or refill for name brand drugs.

*Formulary*
*The Plan's formulary consists of a list of commonly prescribed medications that have been chosen by the Plan based on a drug's effectiveness and cost. The Plan will evaluate any needed additions to or deletions from the formulary. Nonformulary drugs will be covered when prescribed by a Plan doctor.*

Covered medications and accessories include:

Drugs for which a prescription is required by law;

- Oral contraceptive drugs;
- Insulin;
- Disposable needles and syringes needed for injecting covered prescribed medication;
- Intravenous fluids and medication for home use, implantable drugs, and some injectable drugs are covered under Medical and Surgical Benefits;
- Diabetic supplies including glucose test tablets and test tape; Benedict's solution or equivalent and acetone test tablets.

What is not covered

- Drugs available without a prescription or for which there is a non-prescription equivalent available
- Drugs obtained at a non-Plan pharmacy except for out-of-area emergencies
- Vitamins and nutritional substances that can be purchased without a prescription
- Medical supplies such as dressings and antiseptics
- Contraceptive devices including Norplant; injectable contraceptives
- Drugs for cosmetic purposes
- Drugs to enhance athletic performance
- Smoking cessation drugs and medication, including nicotine patches
- Fertility drugs

**Other Benefits**

Dental care

Accidental injury sound Benefit
Restorative services and supplies necessary to promptly repair and replace natural teeth. The need for these services must result from an accidental injury that occurred while in a plan under the FEHB Program; **you pay** nothing.

What is not covered

- Other dental services not shown as covered

CARE MUST BE RECEIVED FROM OR ARRANGED BY PLAN DOCTORS

**Non-FEHB Benefits Available to Plan Members**

The benefits described on this page are neither offered nor guaranteed under the contract with the FEHB Program, but are made available to all enrollees and family members who are members of this Plan. The cost of the benefits described on this page is not included in the FEHB premium; any charges for these services do not count toward any FEHB deductibles, out-of-pocket maximum copay charges, etc. These benefits are not subject to the FEHB disputed claims procedures.

BlueLincs Dental

ATTENTION! BlueLincs HMO enrollees are eligible to join BlueLincs Dental. BlueLincs Dental benefit highlights include:

Simple and Convenient
- No Deductibles
- No Waiting Period Before Benefits Begin
- No Claims to File

100% Coverage for Diagnostic and Preventative Services
- Six-month Exams
- Cleanings
- X-Rays

Full Range of Benefits
- Diagnostic
- Preventative
- Restorative
- Endodontics
- Orthodontics For Children and Adults ($1,250 lifetime maximum)
- Periodontics
- Prosthodontics

Annual Maximum Benefit - $1250 per person, per calendar year

Affordable Premiums

| | Self Only | Self and Family |
|---|---|---|
| Monthly (Bank Draft Only) | $10.70 | $ 30.45 |
| Annually | $128.40 | $365.40 |

When you join BlueLincs Dental, you select a dentist from our list of participating dentists. All covered services must be performed or authorized by the participating BlueLincs Dental dentist. These dentists must meet and maintain rigid standards to participate in this program. For enrollment information, call 1-800-722-5675. Consult the separate Plan description for additional information.

$5,000 Accidental Death and Dismemberment
We're Giving You More Than You Asked For.
Accidental Death & Dismemberment insurance
as part of your BlueLincs HMO coverage.

When you sign up for BlueLincs HMO, you receive $5,000 in AD&D coverage. It's one more way BlueLincs HMO provides you extra value.

Benefits on this page are not part of the FEHB contract

**How to Obtain Benefits**

Questions
If you have a question concerning Plan benefits or how to arrange for care, contact the Plan's Membership Services Office at 1-800-722-5675 or you may write them at P.O. Box 3283, Tulsa, OK 74102-3283. You may also contact the Plan by fax at 918/561-9980 or at its Website at http://www.bcbsok.com or by email at bcbsok@bcbsok.com.

Disputed claims review
If a claim for payment or services is denied by the Plan, you must ask the Plan, in writing and within six months of the date of the denial, to reconsider its denial before you request a review by OPM. (This time limit may be extended if you show you were prevented by circumstances beyond your control from making your request within the time limit.) OPM will not review your request unless you demonstrate that you gave the Plan an opportunity to reconsider your claim. Your written request to the Plan must state why, based on specific benefit provisions in this brochure, you believe the denied claim for payment or service should have been paid or provided.

Within 30 days after receipt of your request for reconsideration, the Plan must affirm the denial in writing to you, pay the claim, provide the service, or request additional information reasonably necessary to make a determination. If the Plan asks a provider for information it will send you a copy of this request at the same time. The Plan has 30 days after receiving the information to give its decision. If this information is not supplied within 60 days, the Plan will base its decision on the information it has on hand.

OPM Review
If the Plan affirms its denial, you have the right to request a review by OPM to determine whether the Plan's actions are in accordance with the terms of its contract. You must request the review within 90 days after the date of the Plan's letter affirming its denial.

You must also ask OPM for a review if the Plan fails to respond within 30 days of your written request for reconsideration or 30 days after you have supplied additional information to the Plan. In this case, OPM must receive a request for review within 120 days of your request to the Plan for reconsideration or of the date you were notified that the Plan needed additional information, either from you or from your doctor or hospital.

This right is available only to you or the executor of a deceased claimant's estate. Providers, legal counsel, and other interested parties may act as your representative only with your specific written consent to pursue payment of the disputed claim. OPM must receive a copy of your written consent with their request for review.

Your written request for an OPM review must state why, based on specific

benefit provisions in this brochure, you believe the denied claim for payment or service should have been paid or provided. If the Plan has reconsidered and denied more than one unrelated claim, clearly identify the documents for each claim.

Your request must include the following information or it will be returned by OPM:

- A copy of your letter to the Plan requesting reconsideration;
- A copy of the Plan's reconsideration decision (if the Plan failed to respond, provide instead (a) the date of your request to the Plan or (b) the dates the Plan requested and you provided additional information to the Plan);
- Copies of documents that support your claim, such as doctors' letters, operative reports, bills, medical records, and explanation of benefit (EOB) forms; and
- Your daytime phone number.

Medical documentation received from you or the Plan during the review process becomes a permanent part of the disputed claim file, subject to the provisions of the Freedom of Information Act and the Privacy Act. Send your request for review to: Office of Personnel Management, Office of Insurance Programs, Contracts Division IV, P.O. Box 436, Washington, DC 20044.

You (or a person acting on your behalf) may not bring a lawsuit to recover benefits on a claim for treatment, services, supplies or drugs covered by this Plan until you have exhausted the OPM review procedure, established at section 890.105, title 5, Code of Federal Regulations (CFR). If OPM upholds the Plan's decision on your claim, and you decide to bring a lawsuit based on the denial, the lawsuit must be brought no later than December 31 of the third year after the year in which the services or supplies upon which the claim is predicated were provided. Pursuant to section 890.107, title 5, CFR, such a lawsuit must be brought against the Office of Personnel Management in Federal court.

Federal law exclusively governs all claims for relief in a lawsuit that relates to this Plan's benefits or coverage or payments with respect to those benefits. Judicial action on such claims is limited to the record that was before OPM when it rendered its decision affirming the Plan's denial of the benefit. The recovery in such a suit is limited to the amount of benefits in dispute.

Privacy Act statement   If you ask OPM to review a denial of a claim for payment or service, OPM is authorized by chapter 89 of title 5, U.S.C., to use the information collected from you and the Plan to determine if the Plan has acted properly in denying you the payment or service, and the information so collected may be disclosed to you and/or the Plan in support of OPM's decision on the disputed claim.

**Program-wide Changes**

Several changes have been made to comply with the President's mandate to implement the recommendations of the Patient Bill of Rights.

- If you have a chronic, complex or serious medical condition that causes you to frequently see a Plan specialist, your primary care doctor will develop a treatment plan with you and your health plan that allows an adequate number of direct access visits with that specialist, without the need to obtain further referrals (See page XX for details).
- A medical emergency is defined as the sudden and unexpected onset of a condition or an injury that you believe endangers your life or could result in serious injury or disability, and requires immediate medical or surgical care (See page XX).
- The medical management of mental conditions will be covered under this Plan's Medical and Surgical Benefits provisions. Related drug costs will be covered under this Plan's Prescription Drug Benefits, and any costs for psychological testing or psychotherapy will be covered under this Plan's Mental Conditions Benefits.

**How BlueLincs HMO Changes January 1999**

None

**Summary of Benefits for BlueLincs HMO - 1999**

Do not rely on this chart alone. All benefits are provided in full unless otherwise indicated subject to the limitations and exclusions set forth in the brochure. This chart merely summarizes certain important expenses covered by the Plan. If you wish to enroll or change your enrollment in this Plan, be sure to indicate the correct enrollment code on your enrollment form (codes appear on the cover of this brochure). ALL SERVICES COVERED UNDER THIS PLAN, WITH THE EXCEPTION OF EMERGENCY CARE, ARE COVERED ONLY WHEN PROVIDED OR ARRANGED BY PLAN DOCTORS.

Benefits Plan pays/provides Page

Inpatient care
Hospital
Comprehensive range of medical and surgical services without dollar or day limit. Includes in-hospital doctor care, room and board, general nursing care, private room and private nursing care, if medically necessary, diagnostic tests, drugs and medical supplies, use of operating room, intensive care and complete maternity care. **You pay** a $5 copay per in hospital doctor visit. xx

Extended care
All necessary services, no dollar or day limit. **You pay** nothing. xx

Mental conditions
Diagnosis and treatment of acute psychiatric conditions for up to 30 days of inpatient care per year. **You pay** nothing xx

Substance abuse
Covered under Mental conditions benefit xx

Outpatient care
Comprehensive range of services such as diagnosis and treatment of illness or injury, including specialist's care; preventive care, including well baby care, periodic check-ups and routine immunizations; laboratory tests and X-rays; complete maternity care. **You pay** $5 per office visit; $5 per house call by a doctor xx

Home health care
All necessary visits by nurses and health aides. **You pay** nothing xx

Mental conditions
Up to 40 outpatient visits per year. **You pay** a $20 copay per outpatient visit xx

Substance abuse
Covered under Mental conditions benefit xx

Emergency care
Reasonable charges for services and supplies required because of a medical emergency. **You pay** a $50 copay to the hospital for each emergency room visit and any charges for services that are not covered benefits of the Plan. xx

Prescription drugs
Drugs prescribed by a Plan doctor and obtained at a participating pharmacy. **You pay** $5 for Generic drugs and $10 for Name Brand drugs per prescription unit or refill xx

Dental care
Accidental injury benefit only. **You pay** nothing xx

Vision care
No current benefit

Out-of-pocket maximum
Copayments are required for a few benefits; however, after your out-of-pocket expenses reach a maximum of $1,000 per Self Only or $3,000 per Self and Family enrollment per calendar year, covered benefits will be provided at 100%. This copay maximum does not include prescription drugs x

APPENDIX B

SUBSCRIPTION RATES, CHARGES, ALLOWANCES AND LIMITATIONS

CONTRACT NAME: GHS Health Maintenance Or. Inc. dba BlueLincs HMO

CONTRACT NO.: CS 2074

Effective January 1, 1999

Biweekly Net-to-Carrier Rates are as follows:

| Code | | High Option |
|---|---|---|
| N5 | Self Only | $ 82.24 |
| | Self and Family | $192.55 |

# 1999 Rate Information for BlueLincs HMO

**Non-Postal rates** apply to most non-Postal enrollees. If you are in a special enrollment category, refer to the FEHB Guide for that category or contact the agency that maintains your health benefits enrollment.

**Postal rates** apply to most career U.S. Postal Service employees, but do not apply to non-career Postal employees, Postal retirees, certain special Postal employment categories or associate members of any Postal employee organization. If you are in a special Postal employment category, refer to the FEHB Guide for that category.

| | | Non-Postal Premium | | | | Postal Premium | |
|---|---|---|---|---|---|---|---|
| | | Biweekly | | Monthly | | Biweekly | |
| Type of Enrollment | Code | Gov't Share | Your Share | Gov't Share | Your Share | USPS Share | Your Share |
| Self Only | N51 | $64.15 | $21.38 | $138.99 | $46.33 | $75.91 | $9.62 |
| Self and Family | N52 | $150.19 | $50.06 | $325.41 | $108.47 | $177.72 | $22.53 |

# APPENDIX C

## CONTRACT ADMINISTRATION DATA

1. *Routine Contract Administration.* Except as specified below, each party should have one representative for administering the contract. The representatives are:

CARRIER
Kathleen Saliba
3401 N.W. 63rd Street
Oklahoma City, OK 73116

OPM
Chief, Insurance Contracts Division IV
P.O. Box 707
Washington, DC 20044

2. *Notice.* Where this contract requires that one party notify the other party in writing such notice shall be sent to:

CARRIER
Kathleen Saliba
3401 N.W. 63rd Street
Oklahoma Citv, OK 73116

OPM
Office of Insurance Programs
P.O. Box 707
Washington, DC 20044

3. *Paying.* The OPM paying office and Carrier office(s) designated to receive funds are specified below. Where the Carrier designates more than one receiving office, *i.e.*, split between the Carrier and an Underwriter, both receiving offices with the percentage split between them shall be shown:

CARRIER
Suzy Loomis
1400 S. Boston
Tulsa, OK 74119

OPM
Fiscal Management Division
P.O. Box 547
Washington, DC 20044

4. *Reporting.* When required, the Carrier shall furnish the following reports to the address specified.

ITEM:

SEND TO:
Fiscal Management Division
P.O. Box 547
Washington, DC 20044

5. *Disputed Claims.* The following offices are designated for the receipt and processing of disputed claims.



CARRIER
Mike Edmondson
1400 S. Boston, 6th Floor
Tulsa, OK 74119

OPM
Insurance Contracts Division IV
P.O. Box 436
Washington, DC 20044

<u>As required by Section 1.7, if any information on this sheet changes, you must notify your Contract Representative immediately.</u>

(CP-99)

# APPENDIX D

FEHBP Supplemental Literature Guidelines

AND

Rules Governing Advertisements of Accident and Sickness Insurance With Interpretive Guidelines (Model Regulation Service, NAIC)

(CR-99)

# APPENDIX D-a

## *FEHB Supplemental Literature Guidelines*

(RV JAN 1999)

This is the primary guide a Carrier should use to assess whether the Carrier's supplemental marketing literature complies with FEHBAR 1603.70, Misleading, Deceptive or Unfair Advertising. (Use the NAIC Guidelines for additional guidance when needed.)

a) GENERAL

1. Section 1.13 of the FEHB contract requires that the Carrier may not distribute or display marketing materials or other supplemental literature (including provider directories) in a Federal facility or arrange for the distribution of such documents by Federal agencies unless the documents have been prepared in accordance with FEHBAR 1652.203-70, and the Carrier has certified to OPM that is the case.

2. Review supplemental marketing material for compliance each year, whether or not it changed from the past year.

3. Word the literature simply and concisely to get a readily understandable, attractive marketing piece.

4. Include sufficient detail to ensure accuracy.

5. Under the FEHBP, the FEHB brochure is based on text approved by OPM and is a complete statement of benefits, limitations, and exclusions. Include the following statement in all supplemental literature which in any way discusses Plan benefits:

*"This is a summary [or brief description] of the features of the [insert Plan's name]. Before making a final decision, please read the Plan's Federal brochure ([insert brochure number]). All benefits are subject to the definitions, limitations, and exclusions set forth in the Federal brochure."*

6. You may include non-FEHBP benefits, i.e., benefits which are not FEHB benefits and are not guaranteed under the Federal contract with the following disclaimer:

*"These benefits are neither offered nor guaranteed under contract with the FEHB Program, but are made available to all enrollees and family members who become members of [insert Plan's name]."*

7. Supplemental literature must be clearly distinguishable from the Federal brochure.

8. Do not use the FEHB logo in your supplemental literature.

9. Do not use material which conflicts with the Federal brochure. If your material conflicts, you must change the material or not distribute it.

b) RATE PRESENTATIONS

Under the FEHBP there are only two categories of enrollment, Self Only and Self and Family. For most enrollments, the premium for each enrollee's enrollment is shared between the enrollee and the Government. The Government contribution is based on the formula provided in the FEHB law. Deductions for most enrollees' share, along with the Government's contribution, are made in accordance with the schedule on which the employee or annuitant's (retiree) salary or annuitant check is issued by the enrollee's agency or retiree's retirement system. Most employees are paid biweekly. Annuitants are issued monthly checks.

Employees and annuitants do not have separate categories of enrollment. They pay the same rates, whether on a biweekly, semimonthly, or monthly basis, and receive the same benefits when they are in the same FEHB Plan, except that active Postal employees pay a lesser share, as their cost sharing formula with the Postal Service calls for a greater Government contribution.

The enrollee's share for each FEHB Plan for each type of enrollment (Self Only, Self and Family) is listed in the *FEHB Guide*. This Guide is prepared each Open Season and is distributed directly to agencies by OPM; they in turn distribute the Guide to employees. Biweekly and monthly rates are also shown on an insert you prepare for your brochure. Separate guides are prepared for special groups of enrollees, including those for which

the Government makes no premium contribution, such as former spouses and employees and dependents with temporarily continued coverage.

In making your rate presentations:

1. List your FEHB rates in each piece of supplemental material which lists benefits. Do not list the rates of any competitor Plan.

2. Immediately above the rates include the following statement:

"*These rates do not apply to all enrollees. If you are in a special enrollment category, please refer to your special FEHB Guide or contact the agency which maintains your health benefits enrollment.*"

3. If you wish to list Postal rates in addition to non-Postal rates, Postal and non-Postal rates should be clearly identified and listed separately. (Please note there are no monthly Postal rates; upon retirement, Postal employees receive the non-postal contribution.)

c) BENEFIT PRESENTATIONS

Please note the following:

1. Do not compare your benefits or operations with that of any other Plan.

2. Accurately describe your FEHB benefits offering.

3. Avoid incomplete or overstated benefit descriptions, or those which conflict with the Federal brochure.

4. Show applicable coverage limitations, such as day or dollar limitations, coinsurance or deductibles.

5. Do not list exclusions and limitations not listed in the Federal brochure.

6. Do not include general references not in the brochure.

7. Do not reference coverage for which a Federal employee or retiree would have to drop FEHB coverage. Exception: 5 CFR 890.301 provides that an annuitant or former spouse, as defined in 5 U.S.C. 8901(10), who cancels FEHBP enrollment for the purpose of enrolling in a Health Maintenance Organization health Plan under sections 1833 or 1876 of the Social Security Act may register to re-enroll. Therefore, if your's is such a Health Maintenance Organization health Plan contracting with Medicare you must describe your Medicare supplemental program for Medicare-covered retirees.

d) ENROLLMENT INSTRUCTIONS

Enrollment under the FEHBP is governed solely by the Federal Employees Health Benefits law and applicable regulations. The various Federal agencies have responsibility for administering the law and regulations during the annual open enrollment period (Open Season) and at all other times during the year. Agency personnel offices perform the basic health benefits functions, such as instructing employees about the conduct of the Open Season and other health benefits matters, answering employee questions, and processing elections and changes of enrollment, including determinations of eligibility and assignment of effective dates of coverage. Agency payroll offices make the necessary salary deductions.

The Federal instrument for electing to enroll in a Plan or changing an existing enrollment in a Plan from Self Only to Self and Family (or the reverse) is the Standard Form (SF) 2809, or alternative electronic or telephonic method approved by OPM. Carriers must be able to accept electronic file transfers. The effective date for Open Season enrollments is the first day of the first pay period which begins on or after January 1 for employees; the effective date generally is January 1 for annuitants. The specific effective date for an individual will be assigned by the individual's personnel office.

Covered dependents are as defined in the FEHB regulations. Basically, dependents are immediate family members, including spouse and unmarried children under age 22. When Self and Family coverage is established for an individual, all dependents as defined under the regulations are automatically covered as of the effective date assigned by the personnel office, whether or not they are listed on the SF 2809, on other documents, or communicated by electronic or telephonic transmittal. Family members (e.g., newborns) who are added under an existing Self and Family enrollment are automatically covered from the date the individual becomes a family member, e.g., from birth. Personnel offices do not issue any notification when a new dependent is added under an existing Self and Family enrollment

and the enrollee does not submit a new SF 2809 or other election instrument.

The agencies are the primary contact point for employees on health benefits enrollment matters. OPM's Office of Retirement Programs performs this function for annuitants (retirees). As highlighted below, Carriers may not impose their own enrollment requirements and procedures.

1. Do not give specific instructions on enrollment.

2. While the Carrier may ask enrollees for information (see Section f) and may follow-up with enrollees and, when necessary, the employing office, do not require that a member complete plan specific enrollment or application forms. (You may ask the enrollee to complete "information" forms.) You may ask the enrollee to keep you advised of family member changes and you may verify the change, but failure to complete a form does not render an eligible dependent ineligible.

3. Personnel offices will not stock your Plan's forms. Do not indicate otherwise.

4. If supplemental literature is directed to potential members rather than just-enrolled members, do not include statements indicating otherwise.

5. Again, the Federal brochure, rather than any other plan document, is the member's complete statement of benefits. Do not indicate otherwise.

e) PROVIDER DIRECTORIES

Carriers must distribute a provider directory along with the Plan's Federal brochure. The directory must conform to the requirements listed below. You must either send a copy of it along with your Federal brochures (except that provider directories are not to be sent along with the brochures you will be sending to OPM's distribution center for annuitants) or otherwise make them readily available to agencies and employees. Please send a provider directory to any Federal annuitant who requests a copy. Agencies and their employees will be advised to expect your provider directory.

Please bear in mind that a Federal employee or annuitant choosing your Plan during the Open Season is doing so with the expectation that the Plan's provider directory is accurate and that providers shown will be available starting January 1.

1. Show the Plan's medical facilities (if a group practice Plan) or individual physicians (if an individual practice Plan) or both (if a mixed model Plan). Show the Plan's hospitals also. State the addresses of the medical facilities and show the general location within the service area for individual doctors and hospitals.

2. In the directory, display prominently the following statement: *"It is important to know when you enroll in this Plan, services are provided through The Plan's delivery system, as described in the Plan's Federal brochure, but the continued participation of any one doctor, hospital or other provider cannot be guaranteed."*

3. Do not list enrollment or eligibility requirements on the provider directory.

4. If the geographic area from which the Carrier will accept enrollments is listed on the provider directory, show it exactly as stated in the Plan's Federal brochure. Likewise, show only the service area which has been approved by OPM. Do not list providers (or areas) located outside the service area (or additional geographic area) shown in the Plan's Federal brochure.

f) INFORMATION FORMS

You may distribute forms to obtain information from enrollees about the enrollee and any dependents. For instance, to obtain the information regarding Medicare you will need for rate-setting purposes under the Federal Program, you may ask who is enrolled under Medicare Part A, Medicare Part B or Medicare Parts A and B. For another example, Health Maintenance Organization carriers may ask that a primary care doctor be selected. If you wish to distribute an information form, you may find such forms are more readily returned if they are postage-paid. The form should follow the requirements listed below:

(1) Include the statement under Section D1 of these Guidelines on the forms.

(2) If the member must select a medical group or IPA, also provide space for the member to make such a selection.

(3) Do not indicate enrollment in the Plan is contingent upon completing and returning

the form.

# APPENDIX D - b

*All Carriers*

Rules Governing Advertisements of Accident
and Sickness Insurance With Interpretive Guidelines
(Model Regulation Service, NAIC)

# RULES GOVERNING ADVERTISEMENTS OF ACCIDENT AND SICKNESS INSURANCE WITH INTERPRETIVE GUIDELINES

Table of Contents


| | |
|---|---|
| Preamble | |
| Section 1. | Purpose |
| Section 2. | Applicability |
| Section 3. | Definitions |
| Section 4. | Method of Disclosure of Required Information |
| Section 5. | Form and Content of Advertisements |
| Section 6. | Advertisement of Benefits Payable, Losses Covered by Premiums Payable |
| Section 7. | Necessity for Disclosing Policy Provisions Relating to Renewability, Cancellability and Termination |
| Section 8. | Testimonials or Endorsements by Third Parties |
| Section 9. | Use of Statistics |
| Section 10. | Identification of Plan or Number of Policies |
| Section 11. | Disparaging Comparisons and Statements |
| Section 12. | Jurisdictional Licensing and Status of Insurer |
| Section 13. | Identity of Insurer |
| Section 14. | Group or Quasi-Group Implications |
| Section 15. | Introductory, Initial or Special Offers |
| Section 16. | Statements About an Insurer |
| Section 17. | Enforcement Procedures |
| Section 18. | Severability Provision |
| Section 19. | Filing for Prior Review |
| Appendix | Interpretive Guidelines |


## Preamble

The proper expansion of accident and sickness coverage is in the public interest. Appropriate advertising can broaden the distribution of insurance and coverage under health maintenance organizations and other prepaid plans among various segments of the public. These rules, while referencing insurance, are intended to apply to the advertisement of accident and sickness benefits whether provided on an indemnity, reimbursement, service or prepaid basis. Advertising can increase public awareness of new and beneficial forms of coverage and thereby encourage product competition. Advertising can also provide the insurance-buying public with the means by which it can compare the advantages of competing forms of coverage.

Insurance advertising has become increasingly important in the years since the 1956 Rules Governing Advertising of Accident and Sickness Insurance were developed. The increasing availability of coverage under group insurance plans and the advent of governmental benefit programs have complicated the decisions the insurance-buying public must make to avoid duplication of benefits and gaps in coverage. The consequent need for detailed information about insurance products is reflected in the requirements for disclosure established by the 1972 Rules (as amended in 1977) Governing Advertisements of Accident and Sickness Insurance. This need for detailed disclosure is especially critical in helping to assure that the insurance-buying public receives full and truthful advertising for accident and sickness insurance. In 1987 the NAIC adopted the Model Rules Governing Advertisements of Medicare Supplement Insurance With Interpretive Guidelines to separately address Medicare supplement insurance advertising. The NAIC has now determined that while the 1972 Rules (as amended in 1977) Governing Advertisements of Accident and Sickness Insurance did address accident and sickness insurance, these new Rules and Interpretive Guidelines revise the previous 1972 Rules and Interpretive Guidelines with respect to accident and

Copyright NAIC 1989

sickness insurance advertising and eliminate duplicative or inconsistent regulation of Medicare supplement insurance advertising.

Although modern insurance advertising patterns much of its design after advertising for other goods and services, the uniqueness of insurance as a product must always be kept in mind in developing advertising of accident and sickness insurance. By the time an insured discovers that a particular insurance product is unsuitable for his needs, it may be too late for him to return to the marketplace to find a more satisfactory product.

Hence, the insurance-buying public should be afforded a means by which it can determine, in advance of purchase, the desirability of the competing insurance products proposed to be sold. This can be accomplished by advertising which accurately describes the advantages and disadvantages of the insurance product without either exaggerating the benefits or minimizing the limitations. Properly designed advertising can provide such description and disclosure without sacrificing the sales appeal which is essential to its usefulness to the insurance-buying public and the insurance business. The purpose of the new Rules Governing Advertisements of Accident and Sickness Insurance is to establish minimum criteria to assure proper and accurate description and disclosure.

## Section 1. Purpose

The purpose of these rules is to protect prospective purchasers with respect to the advertisement of accident and sickness insurance in the same manner as the rules governing advertisements of Medicare supplement insurance. The rules assure the clear and truthful disclosure of the benefits, limitations and exclusions of policies sold as accident and sickness insurance. This is intended to be accomplished by the establishment of guidelines and permissible and impermissible standards of conduct in the advertising of accident and sickness insurance in a manner which prevents unfair, deceptive and misleading advertising and is conducive to accurate presentation and description to the insurance-buying public through the advertising media and material used by insurance agents and companies.

## Section 2. Applicability

A. These rules shall apply to any accident and sickness (except Medicare supplement insurance) "advertisement," as that term is defined herein unless otherwise specified in these rules, which the insurer knows or reasonably should know is intended for presentation, distribution or dissemination in this State when such presentation, distribution or dissemination is made either directly or indirectly by or on behalf of an insurer, agent, broker, producer or solicitor, as those terms are defined in the Insurance Code of this State.

B. Every insurer shall establish and at all times maintain a system of control over the content, form and method of dissemination of all advertisements of its policies. All such advertisements, regardless of by whom written, created, designed or presented, shall be the responsibility of the insurer whose policies are so advertised.

C. Advertising materials which are reproduced in quantity shall be identified by form numbers or other identifying means. Such identification shall be sufficient to distinguish an advertisement from any other advertising materials, policies, applications or other materials used by the insurer.

## Section 3. Definitions

A. (1) An advertisement for the purpose of these rules shall include:

(a) Printed and published material, audio visual material, and descriptive literature of an insurer used in direct mail, newspapers, magazines, radio scripts, TV scripts, billboards and similar displays; and

(b) Descriptive literature and sales aids of all kinds issued by an insurer, agent, producer, broker or solicitor for presentation to members of the insurance-buying public, including but not limited to circulars, leaflets, booklets, depictions, illustrations, form letters and lead-generating devices of all kinds as herein defined; and

(c) Prepared sales talks, presentations and material for use by agents, brokers, producers and solicitors whether prepared by the insurer or the agent, broker, producer or solicitor.

(2) The definition of "advertisement" includes advertising material included with a policy when the policy is delivered and material used in the solicitation of renewals and reinstatements.

(3) The definition of "advertisement" does not include:

(a) Material to be used solely for the training and education of an insurer's employees, agents or brokers;

(b) Material used in-house by insurers;

(c) Communications within an insurer's own organization not intended for dissemination to the public;

(d) Individual communications of a personal nature with current policyholders other than material urging such policyholders to increase or expand coverages;

(e) Correspondence between a prospective group or blanket policyholder and an insurer in the course of negotiating a group or blanket contract;

(f) Court-approved material ordered by a court to be disseminated to policyholders; or

(g) A general announcement from a group or blanket policyholder to eligible individuals on an employment or membership list that a contract or program has been written or arranged; provided, the announcement clearly indicates that it is preliminary to the issuance of a booklet.

B. "Accident and Sickness Insurance Policy" for the purpose of these rules shall include any policy, plan, certificate, contract, agreement, statement of coverage, rider or endorsement which provides accident or sickness benefits or medical, surgical or hospital expense benefits, whether on an indemnity, reimbursement, service or prepaid basis, except when issued in connection with another kind of insurance other than life and except disability waiver of premium and double indemnity benefits included in life insurance and annuity contracts. Accident and sickness insurance policy shall not include any Medicare supplement insurance policy.

Copyright NAIC 1989

C. "Certificate" means for the purpose of these rules, any certificate issued under a group accident and sickness insurance policy, which certificate has been delivered or issued for delivery in this State.

D. "Insurer" for the purpose of these rules shall include any individual, corporation, association, partnership, reciprocal exchange, inter-insurer, Lloyds, fraternal benefit society, health maintenance organization, hospital service corporation, medical service corporation, prepaid health plan and any other legal entity which is defined as an "insurer" in the Insurance Code of this State and is engaged in the advertisement of itself, or an accident and sickness insurance policy.

E. "Exception" for the purpose of these rules shall mean any provision in a policy whereby coverage for a specified hazard is entirely eliminated; it is a statement of a risk not assumed under the policy.

F. "Reduction" for the purpose of these rules shall mean any provision which reduces the amount of the benefit; a risk of loss is assumed but payment upon the occurrence of such loss is limited to some amount or period less than would be otherwise payable and such reduction has not been used.

G. "Limitation" for the purpose of these rules shall mean any provision which restricts coverage under the policy other than an exception or a reduction.

H. "Institutional Advertisement" for the purpose of these rules shall mean an advertisement having as its sole purpose the promotion of the reader's, viewer's or listener's interest in the concept of accident and sickness insurance, or the promotion of the insurer as a seller of accident and sickness insurance.

I. "Invitation to Inquire" for the purpose of these rules shall mean an advertisement having as its objective the creation of a desire to inquire further about accident and sickness insurance and which is limited to a brief description of coverage, and which shall contain a provision in the following or substantially similar form:

> "This policy has [exclusions] [limitations] [reduction of benefits] [terms under which the policy may be continued in force or discontinued]. For costs and complete details of the coverage, call [or write] your insurance agent or the company [whichever is applicable]."

J. "Invitation to Contract" for the purpose of these rules shall mean an advertisement which is neither an invitation to inquire nor an institutional advertisement.

K. "Person" for the purpose of these rules shall mean any natural person, association, organization, partnership, trust, group, discretionary group, corporation or any other entity.

L. "Lead-Generating Device", for the purpose of these rules, shall mean any communication directed to the public which, regardless of form, content or stated purpose, is intended to result in the compilation or qualification of a list containing names and other personal information to be used to solicit residents of this State for the purchase of accident and sickness insurance.

## Section 4. Method of Disclosure of Required Information

All information required to be disclosed by these rules shall be set out conspicuously and in close conjunction with the statements to which such information relates or under appropriate captions of such prominence that it shall not be minimized, rendered obscure or presented in an ambiguous fashion or intermingled with the context of the advertisements so as to be confusing or misleading.

## Section 5. Form and Content of Advertisements

A. The format and content of an advertisement of an accident or sickness insurance policy shall be sufficiently complete and clear to avoid deception or the capacity or tendency to mislead or deceive. Whether an advertisement has a capacity or tendency to mislead or deceive shall be determined by the Commissioner of Insurance from the overall impression that the advertisement may be reasonably expected to create upon a person of average education or intelligence, within the segment of the public to which it is directed.

B. Advertisements shall be truthful and not misleading in fact or in implication. Words or phrases, the meaning of which is clear only by implication or by familiarity with insurance terminology, shall not be used.

C. An insurer must clearly identify its accident and sickness insurance policy as an insurance policy. A policy trade name must be followed by the words "Insurance Policy" or similar words clearly identifying the fact that an insurance policy or health benefits product (in the case of health maintenance organizations, prepaid health plans and other direct service organizations) is being offered.

D. No insurer, agent, broker, producer, solicitor or other person shall solicit a resident of this State for the purchase of accident and sickness insurance in connection with or as the result of the use of advertisement by such person or any other persons, where the advertisement:

(1) Contains any misleading representations or misrepresentations, or is otherwise untrue, deceptive or misleading with regard to the information imparted, the status, character or representative capacity of such person or the true purpose of the advertisement; or

(2) Otherwise violates the provisions of these rules.

E. No insurer, agent, broker, producer, solicitor or other person shall solicit residents of this State for the purchase of accident and sickness insurance through the use of a true or fictitious name which is deceptive or misleading with regard to the status, character, or proprietary or representative capacity of such person or the true purpose of the advertisement.

## Section 6. Advertisements of Benefits Payable, Losses Covered or Premiums Payable

A. Deceptive Words, Phrases or Illustrations Prohibited

(1) No advertisement shall omit information or use words, phrases, statements, references or illustrations if the omission of such information or use of such words, phrases, statements, references or illustrations has the capacity, tendency or effect of misleading or deceiving purchasers or prospective purchasers as to the nature or extent of any policy benefit payable, loss covered or premium payable. The fact that the policy offered is made available to a prospective insured for inspection prior to consummation of the sale or an offer is made to refund the premium if the purchaser is not satisfied, does not remedy misleading statements.

Copyright NAIC 1989

(2) No advertisement shall contain or use words or phrases such as "all," "full," "complete," "comprehensive," "unlimited," "up to," "as high as," "this policy will help fill some of the gaps that Medicare and your present insurance leave out," "the policy will help to replace your income," (when used to express loss of time benefits), or similar words and phrases, in a manner which exaggerates any benefits beyond the terms of the policy.

(3) An advertisement which also is an invitation to join an association, trust or discretionary group must solicit insurance coverage on a separate and distinct application which requires separate signatures for each application. The separate and distinct applications required need not be on a separate document or contained in a separate mailing. The insurance program must be presented so as not to mislead or deceive the prospective members that they are purchasing insurance as well as applying for membership, if that is the case.

(4) An advertisement shall not contain descriptions of policy limitations, exceptions or reductions, worded in a positive manner to imply that it is a benefit, such as describing a waiting period as a "benefit builder" or stating "even preexisting conditions are covered after two years." Words and phrases used in an advertisement to describe such policy limitations, exceptions and reductions shall fairly and accurately describe the negative features of such limitations, exceptions and reductions of the policy offered.

(5) An advertisement of accident and sickness insurance sold by direct response shall not state or imply that because "no insurance agent will call and no commissions will be paid to 'agents' that it is 'a low cost plan,'" or use other similar words or phrases because the cost of advertising and servicing such policies is a substantial cost in the marketing by direct response.

(6) No advertisement of a benefit for which payment is conditional upon confinement in a hospital or similar facility shall use words or phrases such as "tax-free," "extra cash," "extra income," "extra pay," or substantially similar words or phrases because such words and phrases have the capacity, tendency or effect of misleading the public into believing that the policy advertised will, in some way, enable them to make a profit from being hospitalized.

(7) No advertisement of a hospital or other similar facility confinement benefit shall advertise that the amount of the benefit is payable on a monthly or weekly basis when, in fact, the amount of the benefit payable is based upon a daily pro rata basis relating to the number of days of confinement unless such statements of such monthly or weekly benefit amounts are in juxtaposition with equally prominent statements of the benefit payable on a daily basis. The term "juxtaposition" means side by side or immediately above or below. When the policy contains a limit on the number of days of coverage provided, such limit must appear in the advertisement.

(8) No advertisement of a policy covering only one disease or a list of specified diseases shall imply coverage beyond the terms of the policy. Synonymous terms shall not be used to refer to any disease so as to imply broader coverage than is the fact.

(9) An advertisement for a policy providing benefits for specified illnesses only, such as cancer, or for specified accidents only, such as automobile accidents, shall clearly and conspicuously in prominent type state the limited nature of the policy. The statement shall be worded in language identical to or substantially similar to the following: "THIS IS A LIMITED POLICY," "THIS IS A CANCER ONLY POLICY," or "THIS IS AN AUTOMOBILE ACCIDENT ONLY POLICY."

B. Exceptions. Reductions and Limitations

(1) An advertisement which is an invitation to contract shall disclose those exceptions. reductions and limitations affecting the basic provisions of the policy.

(2) When a policy contains a waiting, elimination, probationary or similar time period between the effective date of the policy and the effective date of coverage under the policy or at a time period between the date a loss occurs and the date benefits begin to accrue for such loss, an advertisement which is subject to the requirements of the preceding paragraph shall disclose the existence of such periods.

(3) An advertisement shall not use the words "only," "just," "merely," "minimum," "necessary" or similar words or phrases to describe the applicability of any exceptions, reductions, limitations or exclusions such as: "This policy is subject to the following minimum exceptions and reductions."

C. Preexisting Conditions

(1) An advertisement which is an invitation to contract shall, in negative terms, disclose the extent to which any loss is not covered if the cause of such loss is traceable to a condition existing prior to the effective date of the policy. The use of the term "preexisting condition" without an appropriate definition or description shall not be used.

(2) When an accident and sickness insurance policy does not cover losses resulting from preexisting conditions, no advertisement of the policy shall state or imply that the applicant's physical condition or medical history will not affect the issuance of the policy or payment of a claim thereunder. This rule prohibits the use of the phrase "no medical examination required" and phrases of similar import, but does not prohibit explaining "automatic issue." If an insurer requires a medical examination for a specified policy, the advertisement if it is an invitation to contract shall disclose that a medical examination is required.

(3) When an advertisement contains an application form to be completed by the applicant and returned by mail, such application form shall contain a question or statement which reflects the preexisting condition provisions of the policy immediately preceding the blank space for the applicant's signature. For example, such an application form shall contain a question or statement substantially as follows:

Do you understand that this policy will not pay benefits during the first [insert number] year(s) after the issue date for a disease or physical condition which you now have or have had in the past? YES

Or substantially the following statement:

I understand that the policy applied for will not pay benefits for any loss incurred during the first [insert number] year(s) after the issue date on account of disease or physical condition which I now have or have had in the past.

**Section 7. Necessity for Disclosing Policy Provisions Relating to Renewability, Cancellability and Termination**

An advertisement which is an invitation to contract shall disclose the provisions relating to renewability, cancellability and termination and any modification of benefits, losses covered, or premiums because of age or for other reasons, in a manner which shall not minimize or render obscure the qualifying conditions.

Copyright NAIC 1989